LANGSTON, Administrator de bonis non, Appellant, v. CANTERBURY et al.

### Division One, March 18, 1903.

1. **Administration:** PAYMENT OF CLAIMS: MUST BE ALLOWED OR PROVED.   Unless a claim against the estate of a deceased person has been allowed by the probate court, or established by the judgment of the circuit or other court of competent jurisdiction, and classified by the probate court, the administrator has no right to appropriate any of the assets of the estate to its payment, and if he does so he can not be given credit therefor on final settlement.

2. ———: ———: ———: PRESENT STATUTE.   Under the present statute the administrator shall show that every claim for which distribution has been made by him has been allowed by court according to law.   This is a material amendment to the statute of 1879, and was properly made by the revisions of 1889 and 1899.

3. **Revised Statutes:** VERITY.   The verity or authenticity of a statute which appears in the Revised Statutes can not be questioned except in the face of the original documents on file in the office of the Secretary of State.

4. ———: REVISED BILLS.   General statutes which were revised and amended in revision at the revising session of 1899 were not required by the act which authorized the revision to be published in the Session Acts of that year.   But if such revised bill was included in "the list of general statutes revised and amended" at that session as set forth in the Revised Statutes, and is published therein as a separate chapter, any section thereof imports verity and authenticity.

5. **Administration:** POSSESSION OF INTESTATE'S PROPERTY.   It is the right of the administrator to take possession of all the personal property of the intestate without an order from the probate court to do so.   But he can not lawfully take possession of the real estate until so ordered by the court, nor can he do so then unless such

order is founded on the fact that the real estate is needed by the administration to pay decedent's debts.

6. ——: ORDER TO TAKE POSSESSION OF REALTY: COLLATERAL ATTACK. An order of a probate court to. an administrator to take possession of decedent's real estate not based on a showing that the real estate is needed to pay debts, is of no validity, and can be collaterally attacked.

7. ——: EQUITY: SUIT ON BOND IN CIRCUIT COURT. A decision in a suit in the circuit court which sought to charge the administrator's bondsmen with money expended by him in improvements on the real estate, which was submitted under an agreement that the bondsman was to be permitted to "make use of every equitable defense he may have", is no authority in determining the question as to the extent to which a probate court could apply technical equity principles in an administrator's settlement.    (Distinguishing Byrd v. Governor, 2 Mo. 102.)

8. ——: ——: ADMINISTRATOR AS TRUSTEE: EXTENT OF DECISIONS. This court has gone no further in the direction of treating the settlement of an administrator in the probate court as it does the settlement of a trustee in a court of equity, than to hold that the intestate's creditors have no right to charge the administrator with the profits growing out of his unlawful use of the estate and refuse to credit him with his losses arising therefrom.    But that holding is no authority for ruling that unauthorized outlays by the administrator are lawful, or that the peculiar character of an administrator is merged into and lost in that of a general trustee.

9. ——: ——: RENTS. If the heirs, by exceptions to the administrator's final settlement, object to allowing him credit for moneys expended by him in paying insurance and taxes due since intestate's death, and in completing an unfinished building, on real estate of which he had not been ordered to take possession "for the payment of debts", they can not demand that he be charged with rents received by him from such real estate.

10. ——: ORDER TO TAKE POSSESSION OF REAL ESTATE: REQUEST OF HEIRS. The fact that an order to the administrator to take possession of real estate when there was sufficient personal property to pay the debts, was requested by some of the heirs, does not relieve the order and the administrator's action in using the rents and borrowing money to finish uncompleted buildings thereon, of their unlawful character, nor can it enter into a consideration of charges for these purposes made in the final settlement, but may afford a basis for adjustment of the matter among the heirs.

11. ——: CARING FOR ESTATE. Sections 100 and 101, Revised Statutes 1899, providing that in case the intestate leaves "work in an unfinished state" the court may authorize such "further labor to be

performed as the interest of the estate requires", relate to the personal estate, and have nothing to do with the realty. .

12. ———: ———: REALTY. Section 131, Revised Statutes 1899, authorizing repairs on houses, etc., refers to real estate in control of the administrator after he has taken charge of the same under the terms of section 130 "for the payment of debts," and does not authorize the court to order the administrator to borrow money and use the rents of the other real estate to finish a building begun by the intestate in his lifetime.

13. ———: CREDITS: COMPLETING BUILDINGS: INSURANCE: TAXES. Money used by the administrator to complete an unfinished building on the real estate not needed for the payment of intestate's debts, and to pay insurance and taxes on such real estate, except taxes which accrued before his death, should not be allowed to the administrator as a credit in his final settlement, even though he completed such building and paid such items in obedience to an order of the probate court. But when these items are taken out any item of rent with which the administrator may have charged himself, arising from the possession of such real estate thus unlawfully taken, should also be taken out.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans*, Judge.

REVERSED AND REMANDED.

*W. J. Orr* for appellant.

(1)· "Upon every settlement, the executor or administrator shall show that every claim for which disbursements have been made has been allowed by the court, according to law." Sec. 224, R. S. 1899. Under the above statute, as amended, the respondent was not entitled to credit for the $2,230.87, covering amount paid for the two notes which were never allowed by the probate court. What is the effect of the repeal of the words, "or shall produce such proof of the demand as would enable the claimant to recover in a suit at law?" We contend that the repeal of these words is an affirmative enactment of a new rule of procedure in cases of this kind, and implies a negative of the old, or prior procedure. Ex parte Joffee, 46 Mo. App. 360. That

it is a legislative declaration that administrators can not pay claims which have not been allowed by the probate court in the manner pointed out by the statute, under the maxim, *expressio unius est exclusio alterius.* State ex rel. v. Fisher, 119 Mo. 344.   (2)   On the death of Johnson all of his real estate passed to and vested in his heirs, subject to the right of the administrator to take charge of and control the same for the purposes mentioned in section 130, Revised Statutes 1899, or to repair the same under the order of the probate court under the provisions of section 131.   It will not be contended that the respondent took charge of the real estate under either of these statutes, because, according to the records of demands allowed against the estate, the total debts did not exceed $1,540, while the respondent testified that the deceased left $1,400 in cash and other personal property.   Neither does it appear that any of the real property needed repairs.   On the contrary, the orders made for the respondent to take charge of this real estate negative the conditions of sections 130 and 131, and show a total want of jurisdiction in the probate court to make the same.   Appellant therefore contends that respondent, as administrator, was an intermeddler so far as the real estate was concerned, and had no authority to control the real estate, or to bind the estate of Thomas Johnson for any money expended by him for completing the opera house, or for any money paid for insurance, because it follows as a logical conclusion that if the respondent was not lawfully in charge of the realty he had no insurable interest therein and the policies taken out by him in his own name were void and furnished no protection to the estate.

*James Orchard* for respondent.

(1)   The testimony was that the walls of the building were up and the roof partially on, the floors and

doors were not in, neither were any of the windows, and in fact it was simply a skeleton at the time of the death of the deceased and was absolutely worthless to the estate, but after being completed it was valuable property and rented for the first year for $1,680 and for the second year for $1,620, and has been renting for that ever since the probate court ordered the respondent to complete the building. This order was made under sections 100 and 101 of Revised Statutes 1899, which the courts hold was proper and right, and that the administrator is entitled to credit for money laid out and expended in this way. Powell v. Powell, 23 Mo. App. 365; Benedict v. Webster Groves, 53 Mo. App. 225. After the administrator had taken charge of the estate at the request of the heirs it was his duty to make repairs and complete the building, and he might have done so even though he had no order from the probate court, as the courts hold that if the heirs request the administrator to do certain things and he does so and all the heirs are cognizant of the fact, then he is in equity entitled to credit. Lewis, Adm., v. Carson, 16 Mo. App. 342. (2) Appellant contends that respondent had no right to pay taxes and insurance on the real property, and that the property was not in his possession. We contend that the property was in his possession by order of the probate court, and he, being in possession, not only had the right, but it was his duty, to see that the taxes were paid and to keep the property insured for the benefit of the estate, and if he had not done so it would have been negligence on his part, and should any damage accrue by reason of not having insurance on the same or not paying taxes, the administrator would have been liable on his bond. Lewis, Admr., v. Carson, supra; R. S. 1899, sec. 184. (3) As to the attorney fees, we hardly think that the appellant is very serious about this proposition, as there is no question but what the court holds the right to make an allowance of reasonable attorney's fees on

his final settlement. Jacobs' v. Jacobs, 99 Mo. 436. (4) Although the statute may be as appellant contends, in equity we are entitled to credit. The statute is that you can not collect for improvements, except such as are absolutely necessary, until the convening of the court, and then when court convenes there must be an order made to make the improvements, but in the case of Lewis, Adm., v. Carson, supra, there was no order made for the improvements, neither was there any order made ordering the property into the possession of the administrator. Notwithstanding, they went ahead and made valuable and lasting improvements on the property and paid the taxes and insurance thereon, and the court held that in equity he was entitled to credit for the money laid out and expended for the benefit of the estate, and that is our contention here, as it was all done for the benefit of the estate.

VALLIANT, J.—Respondent Canterbury was the administrator of the estate of Thomas Johnson deceased.. Exceptions to his final settlement were filed by appellant who is the administrator *de bonis non*. The cause was carried by appeal to the circuit court where a final judgment was rendered showing a balance due the former administrator of $12.37. In order to arrive at that balance the court allowed the administrator credit for $2,230.87 paid by him on two notes executed by the intestate in his lifetime but which had never been allowed by the probate court; also $6,933.25 paid by him to complete a building intestate had begun but which was unfinished at his death; also sundry items for taxes and insurance on the real estate, and $100 attorney's fees. The administrator *de bonis non* appeals from that judgment and assigns for error the allowing of those credits to the administrator.

## I.

The requirements of our statutes in reference to the presentation and allowance of demands against the estate of a deceased person are so plain and unequivocal that one can scarcely misconstrue them. Claims must be exhibited to the administrator, presented to the probate court for allowance and established by proof. [Secs. 183 to 191, R. S. 1889; same secs. 184 to 193, R. S. 1899.] Until a claim has been so allowed by the probate court or established by judgment of a circuit or other court of competent jurisdiction and classed by the probate court, an administrator has no right to appropriate any of the assets of the estate to its payment.

Section 223, Revised Statutes 1889, which was in force when this administration was under way, the same being now section 224, Revised Statutes 1899, declares that: "Upon every settlement, the executor or administrator shall show that every claim for which disbursements have been made has been allowed by the court according to law." There can be no two meanings to that.

In McPike v. McPike, 111 Mo. 216, this court sustained the ruling of a referee in allowing an administrator credit for a demand that had not been allowed by the probate court but which had been established before the referee by satisfactory proof. The same ruling was made in Jacobs v. Jacobs, 99 Mo. 427.

Those cases, however, arose under the statute as it was in 1879, which was as follows: "Upon every settlement, the executor or administrator shall show that every claim for which disbursements have been made has been allowed by the court, according to law, or shall produce such proof of the demand as would enable the claimant to recover in a suit at law." [R. S. 1879, sec. 230.] The amendment of that section by striking out the last clause and reducing it to what we now have, is a very emphatic expression of legislative intent that

nothing less than the allowance of the claim by the court would avail the administrator.

In Springfield Gro. Co. v. Walton, 69 S. W. 477, our St. Louis Court of Appeals had before it the same question we are now considering, and commenting on the amendment of section 230, Revised Statutes 1879, per BARCLAY, J., said: "The alteration of the law in question was intended to make the allowance by the court an essential prerequisite to the payment of all ordinary demands against an estate."

The learned counsel for respondents challenge the authenticity of the statute as it now appears in the revision of 1899, and as it appears in that of 1889, and say that an examination of the Session Acts from 1879 to 1889, inclusive, shows no act of the Legislature amending section 230, Revised Statutes 1879.

Our Constitution lays upon the General Assembly the duty to revise all statutes of a general nature at stated periods. [Sec. 41, art. 4.] A bill revising a statute must pass regularly through the channels of legislation but unless there is some special reason that it should be published in the volume of Session Acts, as, for example, that it passes with an emergency clause as to some new feature, it is not published except in the volume of the Revised Statutes. Those volumes are as authoritative as the volumes containing session acts, and whilst it is possible for error or mistake to creep into one as well as the other, yet the verity of either can not be questioned except in the face of the original documents on file in the office of the Secretary of State.

The session of 1889 was a revising session of the General Assembly. Among its acts was one entitled "An Act declaratory of the Revised Statutes of the State of Missouri, and their effect, and to provide for the collection, editing, printing, binding, publishing and distributing the same," approved May 15, 1889. Under

Vol 173 mo—9

the authority of that act the two volumes of our Revised Statutes of 1889 were compiled and published. The act required that the two volumes should contain "all acts revised and amended or enacted, during the present session of the General Assembly, of a general nature, except," etc. The general statutes which are only revised and amended in revision at that session were not published in the Session Acts but only in the volumes of Revised Statutes which was authorized. A list of the general statutes revised and as so revised inserted in the two volumes under the title Revised Statutes of Missouri 1889, is published in volume 2, page 2229 thereof. In that list is the title, "Administration, Chapter I." The appearance of section 224 in that connection is full authority for treating it as the law of the subject, until it is shown to be incorrect by comparison with the original files in the office of the Secretary of State.

To put the matter at rest, however, we will add that there is on file in the office of the Secretary of State an act of the General Assembly entitled: "An act to revise and amend chapter one of the Revised Statutes of Missouri of 1879 entitled: 'Of the administration of estates of deceased persons,' " approved May 24, 1889, which shows that section 230, Revised Statutes 1879, was amended in the particular above indicated and as it appears in Revised Statutes 1889, section 223; same, Revised Statutes 1899, section 224.

The allowance of credit to the administrator for the payment of these two notes was in violation of the section just referred to and was error.

## II.

There is no suggestion in the record that this estate, in personalty, was insolvent, that is, that it did not have ample personalty to pay its debts. There was therefore no necessity for drawing the real estate into

the administration. The heirs could have taken immediate possession of their inheritance and have never been disturbed.

It is the right of an administrator to take possession of all the personal property left by the intestate without an order therefor from the probate court, because the title to the personalty, for the purposes of administration, vests in him; the distributees can not take it until it comes to them in due course of the administration. But with real estate it is not so. It is familiar reading that an administrator can not lawfully take hold of the real estate until thereto ordered by the probate court, and to this it may with equal force be added, he can not take hold of it even when the probate court so orders unless the order is founded on the fact that the real estate is needed in the administration for the payment of debts. [Hall v. Bank, 145 Mo. 418; 2 Woerner's Am. L. of Admr. (2 Ed.), p. 1152; Burke v. Coolidge, 35 Ark. 180; Sumrall v. Sumrall, 24 Miss. 258.]

This court has decided that whilst a judgment of a probate court in a cause within its jurisdiction is entitled to all the presumptions to sustain it that are given to a judgment of a court of general jurisdiction, yet, like a judgment of a court of general jurisdiction, it may be attacked even collaterally if, when tested by its own accompanying record, it appears that the court had no jurisdiction. [Hutchinson v. Shelley, 133 Mo. 400.] In that case it was held that the judgment of a probate court ordering land to be sold for the payment of debts was void because the record of the court in the matter showed that the notice required by the statute had not been given. This was also held in Young v. Downey, 145 Mo. 250. It is as essential to the jurisdiction of the probate court in such case that the record show that the order to take possession of or to sell the land is based on a showing that it is needed to pay debts, as it is that due notice of the proceeding be given.

An order of the probate court to an administrator to take charge of real estate, not based on such a showing, is of no validity.

That the personal estate of an intestate is primarily all that an administrator has any authority over, and that the real estate descends to the heir subject to be drawn into the administration only when it is shown to be necessary to pay debts incurred by the intestate in his lifetime, are principles in the law of administration so well known that it would seem unlikely that an administrator would make any mistake in that respect. Yet not infrequently we find cases in which administrators, in good faith, have taken hold of real estate when they had no right to do so, and have expended money belonging to the estate in its improvement and thus committed waste of assets. The disposition of courts to obviate hardships has led in some cases to an amplification of the principles of equity to shield the administrator where it was possible to do so. But courts have not, even to avoid a hardship, gone so far as to say that an administrator may, even with the authority of the probate court, take possession of real estate when there is no showing that it is needed to pay debts. In Byrd v. Governor, 2 Mo. 102, the intestate had in his lifetime dug and walled a cellar as a first step in building a house on a lot he owned; the administratrix after his death finished the house with funds belonging to the estate; by order of the probate court the house and lot were sold to pay debts, and brought at the sale $750. The value of the lot and cellar as left by the intestate did not exceed $100. The suit was brought in the circuit court against Byrd, a surety on the administratrix's bond, and was submitted to the court under an agreement between the parties that Byrd was to be permitted "to make use of every equitable defense he may have." The court said: "As to the strict law of the case, there can be no doubt; the administratrix in building the house, made a gross mis-

application of the funds of the estate, and her sureties were liable for the waste committed.    By the agreement, however, the defendant may well claim credit for the improved value of the estate, which had been applied towards the debts due by the intestate.''

That decision was commented upon in Merritt v. Merritt, 62 Mo. 150, and the principle deduced ''that executors and administrators stand in the position of trustees to those interested in the estates upon which they administer, and are liable only for want of due care and skill, and that the measure of care and skill required of them is that which prudent men exercise in the direction and management of their own affairs.'' In thus stating that principle as deducible from the Byrd case, the court did not notice the fact that that case really turned on the agreement to allow the defendant to make use of any equitable defense he might have.  That suit, having originated in the circuit court and being a suit on the bond, does  not touch the question as to the extent to which a probate court could apply technical equity principles in an administrator's settlement.

But the Merritt case originated in the probate court and, therefore, what is there said of the duty to apply principles of equity to administrators' settlements refers to probate courts.   That decision, however, goes no farther than to say that where an administratrix using the assets of the estate carries on a business she had no lawful authority to conduct, the creditors have no right to charge her with the profits and refuse to credit her with the losses in the same transaction.   In such case if they treat her as a trustee in her own wrong and claim the benefits of the transaction in which she has acted in good faith though without lawful authority, they must state the account against her on equitable principles.

In that case the administrator had undertaken to carry on the business of keeping a hotel, in which her

husband was engaged when he died; she paid the rent for the hotel for which the estate was liable under contract of the intestate, and she kept in use the furniture which had been appraised at somewhat over $11,000; this, when she ceased the business, she sold for $20,000, of which she collected $18,000, but failed to collect, because of the insolvency of the party, the remaining $2,000. She made a loss in the hotel business, but did not attempt to charge that against the estate, but she did claim credit for the $2,000. The court held that the rent was a proper debt to pay, because the estate was bound for it at all events, and that if the creditors claimed the benefit of the advantageous sale of the furniture and received the benefit of the $18,000 collected, they had no right to charge her with the $2,000 which she could not collect. The court said: "The estate was benefited several thousand dollars by the course she pursued, and it would be too harsh an application of the doctrine under the circumstances of this case, to say that she should bear all the loss and the estate reap all the benefits resulting from her skill and care." That is as far as this court has ever gone in the direction of treating the settlement of an administrator in the probate court like the settlement of a trustee in a court of equity.

In Van Bibber v. Julian, 81 Mo. 618, the administrator had expended money in improvement of the real estate, and in a proceeding by the creditors to subject the real estate to the payment of their debts, the heirs resisted on the ground that the creditors should pursue the administrator to recover the amount expended by him in the improvements, as for a waste of assets, before calling on the heirs to surrender the land. But the court held that the heirs could not withhold the land with the improvements from the creditors and send them to sue the administrator and his sureties for the money which he had unlawfully expended in mak-

ing the improvements.    That was a controversy between the creditors and the heirs.

Those cases may be taken as authority for the proposition that where an administrator acting in good faith has gone outside of his lawful bounds and used money of the estate in carrying on a trade or other business or in improvement of real estate, if the profits of his venture are to be brought into the estate, he is entitled, as against those profits and within their limits, to credit for his unauthorized outlays.    But they are no authority for saying that such outlays were lawful or that the peculiar character of an administrator is merged into and lost in that of a general trustee.

Applying the principles to be deduced from those decisions to the facts of this case, if the heirs, who are the exceptors here, object, as they have a right to do, to allowing the administrator credit for moneys expended by him in taxes and improvements on the real estate, they can not demand that he be charged in his settlement as administrator with rents received by him from the real estate.

If one side of the account affecting the real estate is to be cut out, the other side must go also.    We do not mean to imply that an administrator may not, under some circumstances, by unwarranted intermeddling with real estate, render himself liable to account as administrator for rents received, but what we now say is in reference to the facts of this case.    And what we have just said of taxes applies only to such as have accrued since the death of the intestate, the statute expressly making it the duty of the administrator to pay "all debts, including taxes due the State or any county or incorporated city or town."    [Sec. 184, R. S. 1899.] The word "debts" in that connection means debts due by the intestate at his death.    Of course it is the duty of the administrator to pay taxes which have accrued since the death of the intestate, on property, real and personal, lawfully in his hands for administration, but

the section just referred to concerns only debts which the intestate owed. Let us turn now to the facts of this case.

When the intestate died he left in the course of construction, on a lot belonging to him, a building designed for a store and opera house. The walls of the structure were up and the roof was on, but the floors, windows, doors, etc., were not in and the building was otherwise unfinished. In reference to that the probate court made this order:

"It is ordered by the court that Sam F. Canterbury, administrator of the estate of Thomas Johnson, deceased, proceed as speedily as possible with the completion of said building and in a manner that will be to the best interest of the estate, and that he finish and complete the lower story and basement in a manner as near as may be the original plan and idea of Thomas Johnson before his death, taking care to see that the same is done with as little cost as is practicable, considering the welfare of the estate, and that he complete and finish the upper room for an opera or hall room, and that the same be done economically and in a manner that the same will command the best rent obtainable, and that he use all the materials now on hand for that purpose and buy other and necessary materials and employ necessary labor, and that he have judgment for all moneys by him expended."

The court also made this order:

"Ordered by the court that Sam F. Canterbury, administrator of the estate of Thomas Johnson, deceased, take charge of all the improved real estate belonging to the estate of Thomas Johnson, deceased, and that he proceed to collect the rents now due and to become due, and that he proceed without further order from this court to rent all property now vacant or that may hereafter become vacant, to the best advantage of said estate, and to make such arrangements in regard

to further renting of said property as may seem best to him, so that the interest of said estate may be advanced.''

And this:

''Now on this day comes the above-named administrator and files his petition, wherein he states that said estate owns several brick business houses and other buildings of value, and for the protection of said estate said buildings should be insured against the loss or damage by fire, and he calls the attention of the court to the fact that there is no money in his hands belonging to said estate; and he therefore prays the court to make an order authorizing him to borrow sufficient money from time to time to keep said property insured. The court, after hearing said application and all the evidence relating thereto, and being fully satisfied that it would be to the interest of said estate, therefore orders and authorizes the said administrator to borrow or advance such sums of money from time to time as will be necessary to keep said property properly insured; provided, that said administrator shall not pay tc exceed eight per cent interest for such money, and said administrator shall have credit for all money so expended.''

After these orders were made three of the heirs came into court and moved to vacate the order authorizing the administrator to take charge of the real estate on the ground that the record showed no ground for such order and ''that there are no debts due and owing by said estate, and the personal property of said estate was, at the date of said order, and is, more than sufficient to pay off and discharge all debts by said estate.'' The court overruled the motion. Under those orders the administrator took charge of all the real estate, paid out money for insurance, taxes, etc., and for labor and materials to finish the building. All of these acts were in disregard of the law. The, evidence shows that he did this at the request of some

of the heirs. That fact may furnish a basis for adjustment of the matter with the heirs, but it can not enter into the consideration of the settlement of the administrator.

Respondents rely on sections 100 or 101, Revised Statutes 1899, for authority to do what was done. Those sections are a part of article 5 relating to the personal estate, and they have nothing to do with realty. The only authority in the probate court to order the administrator to take charge of the real estate for the purpose of collecting rents is section 130, Revised Statutes 1899, and that is limited ''for the payment of debts.''

The next section authorizing repairs on houses, etc., refers to real estate in control of the administrator after he has taken charge of it under the terms of section 130, and even the authority to make the repairs there permitted is guarded and allowed only when ''the repairs can be done without prejudice to the creditors.''

To the extent, therefore, that assets of the estate have been used by the administrator to complete the building in question, to pay for taxes, insurance and repairs on the real estate left by the intestate, except taxes accrued before his death, there has been a *devastavit,* and the same should not be allowed to the credit of the administrator in his settlement. But when those items are taken out of the account any items of rent with which the administrator may have charged himself, accruing since the death of the intestate must also be taken out.

### III.

The court properly allowed the administrator credit for a reasonable fee paid by him for legal advice and service. Section 223, Revised Statutes 1899, authorizes such credit.

For the errors above pointed out the judgment is reversed and the cause remanded to be retried according to law as herein expressed.   All concur.