## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

### OCTOBER TERM, 1907.

*(Continued from Volume 126)*

FANNIE DARR, Administratrix, Appellant, v. WIL-
LIAM C. THOMAS et al., Respondents.

**Kansas City Court of Appeals, December 2, 1907.**

1. ADMINISTRATION: Statutory Construction: Secured Debts:
Mortgaged Premises. Section 191, Revised Statutes 1899, pro-
hibiting the payment of debts against an estate secured by real
property until the exhaustion of the security, must be construed
in connection with other parts of the same law in reference to
the same subject and especially with section 143, which em-
powers the probate court if, for the best interests of the estate,
to order the payment of the mortgage debts out of the general as-
sets, and with the general meaning of the administration law
that the debts shall be paid out of the personal rather than
the real estate. [Cases and statutes considered.]

2. ———: ———: ———: ———: Unsecured Creditors. That
section is an enactment in the interest of unsecured creditors
and compels the secured creditor, if the court so directs, to first
utilize his security before resorting to the general assets, thus
jeopardizing and hindering unsecured creditors, and so harm-
onize with the spirit of the administration law. [Adams v.
Adams, 183 Mo. 396, distinguished.]

3. ———: ———: ———: ———: Homestead. A deceased hus-
band had mortgaged his homestead, his wife joining him

127 App—1           (1)

therein. His wife administered on his estate and the mortgage debt was allowed and the administratrix paid the same out of the general assets, thereby releasing the homestead. *Held*, she followed the idea of the administration law and had a right to apply the general assets which came into her hands as administratrix to the extinguishment of said debt, since the primary idea of the security is that it may be used to pay the debt if the debtor fails to pay it from other sources, and no order of the probate court is necessary to authorize the administratrix to so pay it where sufficient assets are in her hands.

Appeal from Clinton Circuit Court.—*Hon. Alonzo D. Burnes,* Judge.

*Horatio F. Simrall* and *W. S. Herndon* for appellant.

(1) The personal estate is the primary fund out of which debts are to be paid. It is only when there are no personal assets that real estate can be used for that purpose. R. S. 1899, sec. 139; R. S. 1899, sec. 144; R. S. 1899, sec. 146; Lewis v. Carson, 93 Mo. 587; 2 Am. and Eng. Ency. of Law (2 Ed.), p. 830. (2) It is the duty of the administratrix to pay all debts if there is sufficient personalty to do so. R. S. 1899, sec. 184. (3) Where there is money enough to pay all demands against an estate, the court shall order the whole to be paid. R. S. 1899, sec. 228. (4) Section 143, R. S. 1899, has no application to a case of this kind. It is similar to sec. 138 which was held not to apply. Chapman v. Merritt, 45 Mo. App. 179. (5) The bank is not bound to rely on its deed of trust alone. It could prove up its debt and is then entitled to be paid out of the assets of the estate. Day v. Graham, 98 Mo. 398; Welton v. Hall, 50 Mo. 300. (6) Section 191, requiring mortgage holders to first exhaust their security before being paid out of the assets of the estate, does not apply to a case where there are no creditors. Only creditors and not heirs can insist on this. Knight v. Newkirk, 92 Mo. App. 261. (7)

It cannot be said that because the homestead is subject to the mortgage debt, the heirs can compel the homestead to be sacrificed to pay it. Their rights are also subject to the payment of the decedent's debts and to the widow's homestead. (8) Homesteads are favored and courts will not destroy them if they can avoid it. Blandy v. Asher, 72 Mo. 28; Vagler v. Montgomery, 54 Mo. 577. (9) Heirs can have no interest in the personalty until all debts are paid. The whole personal estate vests in the executor or administrator for the payment of all debts. Smith v. Denny, 37 Mo. 26; State ex rel. v. Herinsman, 18 Mo. 406. And this is true even though the estate owes no debt. Arley v. Arley, 58 Mo. App. 408. (10) Even though this court should hold that section 191 applies in this case, yet the judgment of the circuit court would still be erroneous, because: The probate court, in adjusting the rights of parties on final settlement, does so according to equitable principles. In re Meeker's Estate, 45 Mo. App. 195.

*E. C. Hall* and *E. M. Harber* for respondents.

(1) Homestead was unknown at common law, and unless appellant can show herself entitled thereto under the statutes of this State her claim must fail. Upon the death of Judge Darr, admitting the premise incumbered was his homestead, it passed to and vested in appellant . . . subject to all debts, the mortgage, which was legally charged thereon during his life. Sec. 3620, R. S. 1899. (2) It is only in case a redemption of encumbered land, "will promote the interest of the estate," that the probate court has authority to order it redeemed from such encumbrances, but it will not be necessary to discuss, or determine here whether or not, when the effect of such order is to provide the widow with a homestead out of the funds which otherwise would go at once to other heirs, and provide the widow with a homestead by discharging it of debts, "legally charged thereon by

decedent, during his life," could properly be made by the probate court, as no such order was sought or received by appellant. Sec. 143, R. S. 1899; Grocery Co. v. Walton, 95 Mo. App. 526. (3) There is nothing ambiguous or uncertain in the language of section 191, Revised Statutes 1899. The section means exactly what it says. Adams v. Adams, 183 Mo. 406. (4) The equitable doctrine contended for by appellant as asserted in Meeker v. Straat, 38 Mo. App. 239, and like case, and the rule announced in Day v. Graham, 97 Mo. 398, cited by appellant, have no place here, and it was doubtless these and like decisions that had given license to impoverish and outrage so many estates that caused the amendments of 1889 to sections 191 and 224 R. S. 1899. Langston v. Canterberry, 173 Mo. 122; Grocer Co. v. Walton, supra; Adams v. Adams, supra.

ELLISON, J.—This proceeding arises on objections to the settlement of an administratrix of an estate. On appeal from the probate to the circuit court certain items claimed as credits by the administratrix were disallowed and charged back to her. She then appealed to this court.

It appears that the administratrix is the widow of William Z. Darr, who died intestate leaving surviving him this administratrix and two children by a former wife who had become of age and were living to themselves. At his death Darr left a homestead occupied by himself and this administratrix. It did not exceed the statutory value. He also left personal property appraised at $3,366.49. Darr (joined by this administratrix as his wife) gave a deed of trust on the homestead to secure his note of $1,600, payable to Charles E. Jones. He likewise, at same time, gave to Jones two building and loan warrants for $300 each as collateral security. Jones assigned the note to the First National Bank of Plattsburg and also delivered the collateral warrants to

the bank. The bank presented the note to the probate court and had it allowed against the estate. The collaterals were collected by the bank and credited on the demand. This administratrix thereafter paid the balance with interest amounting to $1181.04, with money arising out of the personal estate and the deed of trust on the homestead was duly released. As before stated, the circuit court refused to allow the administratrix credit for this payment and had it charged up to her.

The action of the trial court was based on a construction of section 191, Revised Statutes 1899, prohibiting the payment of debts against an estate secured by real property until the security has been first exhausted by the creditor. That section reads as follows: " . . . And when a claim is allowed against an estate which is secured by mortgage, deed of trust or other lien held by the creditor, the same may be allowed as other claims, but shall not be paid until such security held by the claimant has been exhausted; but if such security be not sufficient to pay off and discharge the debt of such creditor, then such creditor for the residue of his debt shall be entitled in common with other creditors to have the same paid out of the estate." Though not so stated, the effect of the position taken by the objectors to the action of the administratrix in paying the mortgage is that the statute just quoted must be interpreted precisely as it reads, disassociated from other parts of the same statute, and be held to mean that in no case can a mortgage debt due from an estate be paid until after the security has been exhausted when the balance only (if any) may be paid out of the general assets. That is not the announcement but it is the logic of objector's position. If such is the true construction the effect upon the general policy of our administration law will be far beyond what the courts and the bar have expected since its enactment in 1889. The direct result of such construction is that there can be no redemption

of real property by the estate of a decedent. The creditor must sell the land and pass the title out of the heirs however *advantageous* it clearly appears it would be for the heirs to retain it. It may be property that cannot, in reason, decrease in value but will in every probability largely increase, and yet it *imperatively must* be sold at a forced sale under the mortgage. The statute in question cannot mean that. It must be construed with other parts of the same law in reference to the same subject, for that is a fundamental rule of construction. By the express terms of another part of the same enactment (sec. 143) the probate court is empowered, if for the best interest of the estate, to order the administrator to pay the mortgage debt out of the general assets. Must this latter statute stand as of no force and to all practical purposes be a dead letter? For if the mortgage creditor can only be paid out of the general assets after he has closed out the security of course the probate court could not order it redeemed. The whole policy of the law of administration has always been thought to be primarily to preserve the real property holdings of estates instead of disposing of them, except where to retain it would work injury to creditors. Thus, by the terms of sections 146 and 170 real estate may be sold to pay debts only when there is not sufficient personalty to pay them. And this is the rule of procedure in all estates except in instances where, from peculiar conditions, it may be thought best to retain the personalty and sell realty; which may be done under the terms of section 161.

But there is yet more of the statute bearing on the question. The section here invoked by the objectors not only requires mortgage liens, but any "other lien held by the creditor," to be first exhausted—that is, foreclosed or executed. "Other lien held by the creditor" covers judgments and vendor's liens, and so under the literal and disassociated construction of the statute, no

judgment or vendor's lien could be paid, but the lands must be actually sold and only the deficit of the creditor's claim after sale could be paid out of the general personal estate. But by the terms of section 184 (subdivision 4) judgments are classified and paid as other claims; except if the estate be *insolvent* they shall be paid, not by the creditor exhausting the lands by closing his lien, but by the administrator selling the land at administration sale under order of the probate court. [Secs. 152-155.] So as to a vendor's lien. He, too, if the statute is to receive a literal and disassociated construction, would be compelled to foreclose his lien. Yet under the terms of section 138, in case of the estate having a vendor's lien creditor, the probate court may order the lien to be paid out of the assets of the estate. And the rulings of the courts on these statutes, on cases arising since the enactment of section 191, have been in accord with their reading and that section has not been thought to nullify them. [Chapman v. Merrett, 45 Mo. App. 179; Meeker v. Straat, 38 Mo. App. 239.]

Besides the incongruities and inconveniences already stated which stand in the way of objectors' construction of the statute, there are many others which might be suggested. Thus, suppose one of several children should mortgage his own land as security for his father's debt, and the father died without paying it. Is it reasonable to suppose that the other children or the administrator and probate court could force the creditor to sell the land and leave the other child to the circumlocution of presenting a claim for allowance out of the general fund of the estate on account of his land having been taken to pay the deceased father's debt? Again, suppose an estate is solvent, consisting of $50,000 in personalty and one piece of real estate,—the family homestead, which is mortgaged for $5,000, which the heirs from matters of sentiment or otherwise, were anxious should be preserved and not sold out of the family;

could it be thought that this statute would compel the administrator and probate court to refuse the mortgagee payment of his claim until he first sold the homestead? Why could it not be paid out of the personalty?

It would therefore seem to be apparent that section 191 should not be construed with literal preciseness, but should be considered with other portions of the statute and kept in harmony with them and be given a meaning which is reasonable and will effectuate its evident purpose. The true construction of that statute is that it is an enactment in the interest of unsecured creditors, and so we announced in Knight v. Newkirk, 92 Mo. App. 258. Ordinarily a secured creditor can lay by his security and go upon the general estate of his debtor. He may hold his security in reserve and only call it into service for whatever he fails to realize by the ordinary proceeding to collect his claim. [Day v. Graham, 97 Mo. 398; Edmonson v. Phillips, 73 Mo. 57; Greenwell v. Heritage, 71 Mo. 459.] This statute compels him to reverse the order of such proceeding and first utilize his security, thus not jeopardizing or hindering unsecured creditors except for what balance, if any, he may fail to get out of such security. Thus interpreted it does not run counter to other parts of the same law.

But it has been strongly insisted by the objectors that the Supreme Court in the case of Adams v. Adams, 183 Mo. 396, has construed section 191 in accord with their view. An examination of that case has disclosed that that court in no way considered the section. That case was for partition of lands and arose in the circuit court. It was not such a case nor such a court (except on appeal from the probate court) where, ordinarily, the statute could properly arise; and all that is said of the statute in the Adams case is a mere statement, at page 406, that the plaintiffs therein invoked the section, and at page 407, that defendants did likewise in their behalf. The further several claims made by the contesting

Darr v. Thomas.

parties are then stated, and then the opinion of the court follows, in which no reference is made to the statute in controversy. On the contrary it is not again referred to nor is any account taken of it, and the decision is made by determining the other points of contention between the parties. The case, in short, was this: A husband died leaving a homestead and other lands in which the widow had a dower interest. The husband, in his lifetime, joined by his wife, mortgaged the homestead. After his death the widow sought, in a partition suit, to have the homestead relieved of the mortgage by having the other lands sold to pay it. Or, as expressed by the court, she sought to have the mortgage transferred from the mortgaged to the unmortgaged lands. The court decided that she could not do so. The decision was in no wise based upon an arbitrary demand of the statute, but is reasoned out on other grounds without reference to the statute, directly or indirectly.

We are thus left to dispose of this case without any aid from the Adams case. From the statement we made at the beginning, it will be seen that the deceased husband, in his life time owed a note to Charles E. Jones and that his wife, the present administratrix, joined him in giving a mortgage on the homestead to secure its payment. She did not owe the debt and had no other connection with it than signing the mortgage. There was personal estate sufficient to pay that debt and all others. After it was duly allowed she paid it out of such personalty. In doing so she but followed the accepted idea of the administration law from an early day to the present time. The personalty vested in her as administratrix for the purpose of paying debts and costs of administration. The heirs have no title to it nor interest in it until an order of distribution. [Smith v. Denny, 37 Mo. 20; State ex rel. v. Moore, 18 Mo. App. 406.] The personal estate (as already stated) is the primary fund out of which the debts of the estate must be paid

[Lewis v. Carson, 93 Mo. 587, 591; Langston v. Canterbury, 173 Mo. 122, 130, 132.] It is true that the homestead was mortgaged to secure the payment of the debt, but in his life time the husband owed the debt and his general effects were liable to its payment, and when he died his general effects were still liable. The primary idea of a security is that it may be used to pay the debt if the debtor fails to pay it from other sources. And a debtor, primarily, should promptly pay his debt without letting it go to protest or by default, and thus putting the creditor to the trouble and annoyance of a resort to the security. The estate owes the same prompt duty except, from necessity, the debt must first be allowed by the probate court, and classified.

The statute in question has interposed in behalf of creditors a duty upon the administrator and probate court, which gives to them in summary manner what an unsecured creditor in equity has always been able to do, viz., where another creditor (liable to come upon the common fund) has a separate security he could be compelled to first resort to that security and thereby, to that extent, relieve the unsecured creditor.

It has been already shown that in spite of the general language of section 191, that when a secured debt was allowed it should not be paid until the security was first exhausted, yet the terms of section 143 gives the power to the probate court to order it to be paid, if, in the opinion of the court, it will promote the interest of the estate and not prejudice the creditors. The objectors recognize that section 191 could not possibly have the effect of entirely abrogating section 143, but insist that before the secured claim can be paid by the administrator there must be an order of the probate court to redeem, and that if he pays it without such order he shall not be allowed credit therefor. The cases of Langston v. Canterbury, 173 Mo. 122, and Springfield Gro. Co. v. Walton, 95 Mo. App. 526, are cited in sup-

port of such claim. We think those cases do not have bearing or influence on section 143. They construe section 224. Section 143 has been as it is now written since 1855, and it has been the ruling of the courts that the holder of the secured debt might have it allowed and then paid out of the assets by payment made by the administrator without an order of the probate court. [Day v. Graham, 97 Mo. 398.] The section does not read that the mortgaged property cannot be redeemed without an order. It merely reads that the probate court "shall have power" to order it redeemed "out of the personal assets of the estate." Whereas the statute section 224) construed by the two cases cited by objectors, requires that an allowance by the court shall have been absolutely made before an administrator can obtain credit for its payment. Section 143 merely grants power to the probate court when it thinks it better for the estate, and not hurtful to creditors, to compel the administrator to redeem although the mortgagee would prefer that it run on at interest.

The result is the conclusion that the judgment should have been for the administratrix and it is accordingly reversed and the cause remanded. All concur.