### WELLMAN v. BETHEA.

(District Court, E. D. South Carolina. May 30, 1917.)

1. EXECUTORS AND ADMINISTRATORS ⊂⊃453(4)—ACTIONS—JUDGMENT—COLLATERAL ATTACK.

In an action against an administrator, in which he pleads plene administravit, a judgment paid by him, which was regular in form and based upon the verdict of a jury, cannot be attacked, whatever inferences may be indulged regarding the bona fides of the account on which such judgment was recovered.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1897–1908.]

2. DEATH ⊂⊃11—ACTIONS FOR CAUSING DEATH—NEW CAUSE OF ACTION.

The statutory right to sue for wrongful death is a new cause of action, independent of any cause of action for the tort committed by defendant, which the deceased may have had during his life, or would have had, if he had survived the injury.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 10, 15.]

3. STATUTES ⊂⊃181(1)—CONSTRUCTION—ASCERTAINING INTENT.

In construing a statute, the court must ascertain the intention of the Legislature; but such intention must be ascertained from the words used in the statute and the subject-matter to which it relates.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 259.]

4. STATUTES ⊂⊃188—CONSTRUCTION—MEANING OF LANGUAGE.

When words used in a statute have a well-settled legal meaning they will be given such meaning; but, when they have no such meaning, it will be presumed that the Legislature used them in the light of their usual and ordinary meaning.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 266, 267, 276.]

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. EXECUTORS AND ADMINISTRATORS ⊂⊃261—PAYMENT OF CLAIMS—PRIORITY—"DEBT."

Under the South Carolina statute fixing the order of payment of debts and charges against the estates of decedents, by providing five classes, and specifying, as the fifth class, bonds, debts by specialty, and debts by simple contract, a judgment recovered against the administrator for wrongful death, founded upon a statute of another state, is not a "debt," and is not of equal dignity and entitled to prorate with a judgment upon a contractual cause of action, especially as it is doubtful whether Civ. Code S. C. 1912, § 3955, giving a right of action for wrongful death, gives any such right of action against the personal representative of the wrongdoer.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 944–974.

For other definitions, see Words and Phrases, First and Second Series, Debt.]

6. STATUTES ⊂⊃184—CONSTRUCTION—ANNULLING PURPOSE OF LEGISLATURE.

While, if a statute is open to construction, the courts will not construe its language so as to nullify its purpose, this rule is to be resorted to only for the purpose of ascertaining the Legislature's intention, and will not justify reading into the statute something not expressed by its terms.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 262.]

7. EXECUTORS AND ADMINISTRATORS ⊂⊃111(6)—EXPENDITURES—COUNSEL FEES.

Where, at the time judgment was rendered against an administrator, his counsel exhibited an account by the administrator showing a balance in his hands of $380.40, and proposed to plaintiff's counsel that they take judgment for that amount, or that it would be turned over to plaintiff, which offer was not accepted, and subsequently the judgment was opened, and the administrator was permitted to plead plene administravit, on a showing that $380.40 was all the unadministered assets, the subsequent payment by the administrator to his counsel of $250, in addition to $250 previously paid, could not be justified.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 456.]

8. EXECUTORS AND ADMINISTRATORS ⊂⊃261—PAYMENT OF CLAIMS.

While, under the South Carolina statutes, a judgment recovered against an administrator for wrongful death is not entitled to share in the assets of the estate with debts due by simple contract, any balance remaining in the administrator's hands after the payment of such debts is subject to the payment of such judgment.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 944–974.]

At Law. Action by Sarah A. Wellman against John C. Bethea, administrator. Judgment for plaintiff for a part of the amount sued for. See, also (D. C.) 213 Fed. 367.

Mitchell & Smith, of Charleston, S. C., for plaintiff.
Gibson & Muller, of Dillon, S. C., for defendant.

CONNOR, District Judge. The pleadings, exhibits, and admissions of the parties, disclose the following facts:

On March 2, 1911, plaintiff, Sarah A. Wellman, in behalf of herself and her children, instituted an action in this court against defendant, "John C. Bethea, clerk of court, as administrator of the estate of John H. Bethea, deceased," for the recovery of $25,000 damages, alleged to

have been sustained by reason of the death of her husband,. Ora E. Wellman,, caused by the wrongful and unlawful act of defendant's intestate. The homicide occurred in the state of Delaware, and the suit was based upon the cause of action given to plaintiff by the statute in force in that state. Defendant, in his answer, denied the allegations contained in plaintiff's complaint. At a term of this court held on January 7, 1913, plaintiff recovered judgment against defendant, in his representative capacity, for the sum of $4,000. Execution was issued against defendant, in his representative capacity, for the sum of $4,000. Execution was issued against defendant administrator, and was returned unsatisfied, except for the sum of about $23.

Plaintiff, on June 28, 1913, instituted an action against defendant John C. Bethea, personally, and the Gulf & Atlantic Insurance Company, surety, on his official bond, for the recovery of the balance remaining due and unpaid on said judgment, alleging that defendant John C. Bethea, having failed to plead plene administravit, or insufficient assets, was liable personally for the full amount of said judgment. Defendant, in his representative capacity, on May 25, 1914, instituted a suit in this court, in equity, alleging that he had, prior to the rendition of the judgment of January 7, 1913, administered and disbursed the assets which came into his hands as administrator of John H. Bethea, except the sum of $380.40, and that since the rendition of the judgment he had disbursed, in due course of administration, this amount, less $35. He further alleged that his failure to plead plene administravit in the action against him was due to excusable mistake, etc. This cause, upon defendant's answer, came on for hearing, whereupon a decree was passed March 19, 1915, permitting the said John C. Bethea, administrator, to enter his plea in the original action. This decree was affirmed. 228 Fed. 882, 143 C. C. A. 280. The liability of defendant, as administrator, to plaintiff, is dependent upon his making good his plea—that he has fully, and in accordance with the statutes in force in South Carolina, administered the estate of his intestate. His accounts, filed in the probate court, show that, on November 27, 1910, he received, as administrator, $2,214.64. He disbursed in cost of administration and commissions, $115.24; counsel fees in the defense of plaintiff's action, $250; and action of Mrs. Medlin against him as administrator, $25.

On March 2, 1911, being the same day on which this action was instituted, Mrs. M. E. Medlin instituted an action in the court of common pleas of Dillon county against defendant, as administrator of John H. Bethea, and in her complaint she alleged that his intestate was indebted to her for "board and service" during the years 1904 to 1909, inclusive, at the rate of $20 a month, aggregating the sum of $1,440; that she had presented her account to defendant and he refused 'to pay same. Defendant, on April 5, 1911, filed his answer to the complaint, averring that he had not sufficient information to form a belief as to the truth of the allegation of the complaint, and therefore denied same. On October 26, 1911, the cause was brought to trial before the court and a jury, when a verdict was rendered against defendant for the full amount claimed by her, and judgment rendered accordingly. On December 1, 1911, defendant paid said judgment, together with $4 cost,

aggregating $1,444, leaving a balance in his hands, December 15, 1911, of $380.40. Of this amount defendant paid, December 15, 1911, $1 for filing return; January 1, 1913, to his attorneys for service rendered in this case, and another case of like character brought by Mrs. Williams, the sum of $250, $64 cost in this case, and commissions aggregating $94.40, leaving in his hands, January 3, 1911, $35. Plaintiff attacks the account in respect to the payment of Mrs. Medlin's judgment.

[1] Whatever inferences may be indulged in regard to the bona fides of her account, from the fact that her action was instituted on the same day upon which plaintiff brought her suit in this court, coupled with the rather indefinite character of her account, the judgment is not open to attack in this court, or in this action. It is regular in form, and based upon the verdict of the jury in the court of common pleas of Dillon county. In view of its effect upon the rights of plaintiff in this action, and Mrs. Williams, plaintiff in another action of like character, in which she recovered judgment, it would seem that, while under no legal obligation to do so, it would have occurred to the defendant to have notified them of the institution of the action. The sole question now open to plaintiff is whether the defendant, administrator, was not under legal liability to withhold payment of that judgment until the termination of this action, to the end that the assets in his hands should be divided pro rata between the judgments. The answer to this question is dependent upon the construction of the South Carolina statute, prescribing the method of administration of the estates of decedents. It is held by the Supreme Court of South Carolina that the status of the claims against the estate of deceased persons, in respect to their rank in the administration of the estate is fixed by reference to the date of the death, and is not affected by the date of the judgment fixing its validity and amount. Fraser & Dill v. City Council, 23 S. C. 373.

The South Carolina statute fixes the order of payment of debts and charges against the estates of deceased persons by providing five classes. It is manifest that neither plaintiff's nor Mrs. Medlin's debts are included in either of the first four classes. The fifth class includes "bonds, debts by specialty and debts by simple contract." The plaintiff insists that her claim, or cause of action, is of equal dignity and entitled to prorate with Mrs. Medlin's judgment, without regard to the cause of action or the date of the judgment. Defendant insists that plaintiff's cause of action or claim is not within the language of the fifth or any other class of debts directed to be paid by the administrator—that, in respect to the cause of action created by the Delaware statute, in favor of plaintiff, as the widow of her deceased husband, by reason of his death, caused by defendant's intestate, there is a casus omissus, a claim for which no provision is made. The question is of first impression. Neither of the learned and industrious counsel have called attention to any decided case in point.

[2] It is uniformly held that the right to sue for wrongful death, given by Lord Campbell's Act and the state statutes in this country, is a new cause of action, independent of any cause of action for the tort committed by defendant, which the deceased may have had during his life, or would have had, if he had survived the injury. 8 Am. & Eng.

Enc. 859; Osteen v. So. Ry., 76 S. C. 368, 57 S. E. 196; Beaver's Adm'r v. Putnam's Curators, 110 Va. 713, 67 S. E. 353. The claim, or demand for damages, did not exist against the defendant's intestate and could not, therefore, in any proper sense, be termed a debt due by contract. Whether a judgment rendered upon a claim for a tort, as for assault and battery, or a personal injury sustained by the negligence of defendant's intestate, would have been within the statute, is not involved here, and analogies do not aid in dealing with the question. It is manifest that, to bring plaintiff's claim within the terms of the statute, so that it may share with a contract debt, resort must be had to construction, sustained by the contention that such was the legislative intention.

[3] A well-settled rule of statutory construction imposes upon the court the duty of ascertaining the intention of the Legislature, with the restriction that such intention must be ascertained from the words used in the statute and the subject-matter to which it relates. "The spirit of the act must be extracted from the words of the act, and not from conjectures aliunde." Gardner v. Collins, 2 Pet. 58, 7 L. Ed. 347. Legislative intent, determining statutory construction, "is to be searched for in the words which the Legislature has employed," and there is no ground for construction where apt language is found. The Paulina v. U. S., 7 Cranch, 52, 3 L. Ed. 266. The general rule of statutory construction is that the intent of the lawmaker is to be found in the language he has used; and that language is always controlling, unless there are cogent reasons for believing that the language does not fully and accurately disclose the intent. United States v. Goldenberg, 168 U. S. 95, 18 Sup. Ct. 3, 42 L. Ed. 394.

[4] When words found in a statute have a well-settled legal meaning, they will be given such meaning in seeking the legislative intention. When they have no such meaning, it will be presumed that the Legislature used them in the light of their usual and ordinary meaning. While not strictly analogous, the discussion in Louisiana v. Mayor of New Orleans, 109 U. S. 285, 3 Sup. Ct. 211, 27 L. Ed. 936, indicates the trend of thought. The relators, Folsom and others, recovered judgment against the city for damages sustained by a mob; the right of action being conferred by a statute. At the time the injuries were sustained, and one of the judgments rendered, authority was vested in the governing body of the city to levy taxes to an amount sufficient to pay the judgments. Thereafter, by a change in the statute, the limit of the power to levy taxes was so reduced that the city had no funds out of which the judgments could be paid. The relator sought, by a writ of mandamus, to compel the governing board to levy taxes for the payment of the judgments, contending that the judgments were contracts within the provision of the federal Constitution, and that the act reducing the limit of taxation violated the obligation to pay. The Supreme Court, by Mr. Justice Field, said:

"The right to reimbursement for damages caused by a mob or riotous assemblage of people is not founded upon any contract between the city and the sufferers. Its liability for the damages is created by a law of the Legislature, and can be withdrawn or limited at its pleasure. * * * The obligation to make indemnity created by the statute has no more element of

contract in it, because merged in the judgments, than it had previously.
* * * A judgment for damages, estimated in money, is sometimes called by
text-writers a specialty or contract of record, because it establishes a legal ob-
ligation to pay the amount recovered; and, by a fiction of law, a promise to
pay is implied when such legal obligation exists. It is on this principle that
an action ex contractu will lie upon a judgment. * * * But this fiction
cannot convert a transaction wanting the assent of parties into one which
necessarily implies it."

In Chase v. Curtis, 113 U. S. 452, 5 Sup. Ct. 554, 28 L. Ed. 1038, it appeared that a statute required certain corporations to make and file, within a fixed time, a report, which was required to be published, stating, among things, "the amount of its existing debts." Upon fail- ure to make and publish such statements, the managing officers were made liable "for all the debts of the company then existing and for all that shall be contracted before such report shall be made." Plain- tiff recovered a judgment against the corporation of which defendants were managing officers, upon a cause of action founded upon a tres- pass. The judgment was rendered before the time for filing the re- port. The report required by the statute was not filed nor published. Plaintiff sued defendants, basing his right to judgment upon the lia- bility imposed by the statute. A demurrer having been sustained, the cause was brought to the Supreme Court, and Mr. Justice Matthews said:

"The liability is new and unknown to the common law, and is in terms limited to demands ex contractu. * * * Damage arising upon tort is not a debt accrued, within any reasonable construction of that term."

Blackstone says:

"Any contract, whereby a determinate sum of money becomes due to any person, and is not paid, but remains in action merely, is a contract of debt." (Jones' Blk. book II, 1347.)

A statute permitted "mutual debts" to be used as a set-off. It was held that a claim for unliquidated damages could not be so used. "It must be a claim upon which an action of debt, or indebitatus assump- sit would lie." Lindsay v. King, 23 N. C. 401. A statute making it the duty of an administrator to pay all debts including taxes due means debts due by the intestate at the time of death, and applies only to debts which intestate owed. Langston v. Canterbury, 173 Mo. 122, 73 S. W. 151. In Cable v. McCune, 26 Mo. 371, 72 Am. Dec. 214, it was held that where a statute imposed the duty upon the directors of a corporation to publish the amount of "existing debts" against such a corporation, making the directors liable for a failure to do so, that a judgment recovered against the corporation upon a cause of action for negligence was not within the statute. The judge, writing the opinion, defined a debt as:

"A sum of 'money due by a certain and express agreement.' * * * The demand sought to be enforced in the present action is certainly not a debt in the legal acceptation of the term, and it is, to say the least, doubtful whether it could be so regarded in its popular acceptation."

This case was approved in Cable v. Gaty, 34 Mo. 573, 86 Am. Dec. 126; Heacbek v. Sherman, 14 Wend. (N. Y.) 58.

In Carver v. Braintree Mfg. Co., 2 Story, 432, Fed. Cas. No. 2485,

the question, as to the definition of the term "debt contracted" in a statute, would be held to include "dues owing" or "liabilities incurred" by a corporation. The question arose upon the competency of a witness, who was a stockholder in a corporation, in which, under a Massachusetts statute, the stockholders were made liable for the "debts contracted" by the corporation. Judge Story said:

"I confess that, with all the lights which have been thrown upon the question by the able arguments at the bar, I am not without some lurking doubts."

The action was for damages sought to be recovered against the corporation for infringement of a patent. A stockholder made liable for the debts contracted by the corporation was held incompetent as a witness, upon the theory that he would be personally liable for the amount of such judgment as might be recovered against the corporation. While any decision rendered by Judge Story is entitled to great respect and should be given careful consideration, in this instance it is manifest that he was in much doubt. As shown by cases cited, the Supreme Court has not adopted his views in construing statutes containing the same language.

In Manion v. Ohio Val. Ry. Co., 99 Ky. 504, 36 S. W. 530, it was held that a statute authorizing a guardian, with leave of the court, to settle and compound any debt or demand for his ward, did not authorize him to compromise a claim for damages sustained by a tort.

[5] The foregoing are only a few of the numerous cases in which the word "debt" has been defined. It must be conceded that there is not perfect harmony in the decisions. I am constrained to conclude that, while not free from doubt, the more natural construction, that which most strongly commends itself to the mind, excludes the claim of the plaintiff from the statute fixing the order of payment of the debts of a decedent. The case is singular; that is, unusual. It is probable that the Legislature did not have such a case in contemplation when drafting and enacting the statute. The learned counsel for plaintiff calls attention to the South Carolina statute providing that causes of action for injuries to the person shall survive both to and against the personal or real representative of the deceased persons and the legal representatives of insolvent persons. 1 Civ. Code, § 3963. It is also provided by section 170, Code Civ. Proc., that "no action shall abate by death * * * or other disability of a party." Neither of these sections of the Code are applicable to the plaintiff's cause of action. The last section applies to actions pending at the death of the defendant, and the other section saves the right of action against the personal representative which has accrued for or against the intestate during his life. It is not clear that the South Carolina statute (1 Civ. Code, § 3955, being substantially the same as Lord Campbell's Act) gives the right of action against the personal representative of John H. Bethea. This would seem to be the view held by the Court of Appeals of Virginia in Beavers v. Putnam's Curators, supra. If this be the correct view, the argument urged by the counsel for attributing to the Legislature the intention to include, under the words "debts by simple contract," a claim of the character involved here, is much weakened.

If no cause of action is given by section 3955 against the personal representative of the slayer of plaintiff's intestate, then no intention can be attributed to the Legislature to provide for the payment of a judgment recovered against him.

But, as said by counsel, plaintiff's action is brought under the provisions of the Delaware statute, which gives the right of action in such cases to the widow. 13 Laws Del. c. 31, § 2. By section 6 of the same statute the right of action is saved against the personal representative of the deceased. It is under this statute that plaintiff sues. The Virginia statute has a similar provision. This provision of the Delaware statute does not aid in ascertaining the intention of the South Carolina Legislature in regard to the order in which a decedent's debts are to be paid. Counsel say that, unless the payment of the claim arising out of the statutory right of action be provided for under the term "debts by simple contract," the statute giving the right of action in such cases is nullified—made of none effect.

[6] By a well-settled rule the court will not, if open to construction, so construe the words of a statute as to nullify the purpose of the Legislature. The rule, however, is to be resorted to only for the purpose of ascertaining the legislative intention, and will not justify reading into the statute something not expressed by its terms. Plaintiff's counsel suggest that, if the plaintiff's claim is not within the statute, the judgment cannot be paid at all, although the estate, after paying the debts provided for, is solvent. This question is not presented in the present aspect of the case. The sole question here is whether plaintiff's claim is entitled to share with debts for which provision is expressly made. It certainly is not free from difficulty. Courts should not, to meet hard cases, give strained construction to statutes. It is better to adopt a natural construction of language and leave to the Legislature the duty, as it has the power, to provide for cases not included in the statute.

[7] The plaintiff insists that the payment of $250 additional counsel fee, after the rendition of the judgment, was unauthorized and a devastavit. It appears in the record that, when the judgment in this case was rendered, on January 7, 1913, defendant's counsel exhibited in open court, on account stated by the defendant, as administrator, showing a balance in his hands of $380.40, and proposed to plaintiff's counsel that they could take judgment for that amount, or that it would be turned over to plaintiff. This offer plaintiff's counsel neither accepted nor rejected. See affidavits and opinion in the equity suit. Record pp. 44, 47, 49, 57. The account now filed shows that, on January 1, 1913, six days before the judgment was rendered, defendant paid to his counsel, on account of fee, $250. He had, theretofore, paid them for services in this litigation $250. It is manifest that, on January 7, 1913, defendant stated in open court and exhibited an account showing that he had in hand, after paying the debts and cost of administration to that date, $380.40, which he offered to "turn over to plaintiff."

It was upon this finding that the decree was rendered in the equity suit, opening the judgment and permitting defendant to file his plea. I am of the opinion that the payment of $250 after that date for coun-

sel fees was in derogation of the right of plaintiff. There were two suits of the same character, in which judgment for $35,000 was demanded. A fee of $500, if the estate had been of larger value, would not have been excessive; but, in view of the fact that defendant and his attorneys knew, certainly on January 7, 1913, that but $380.40 could be recovered, I am of the opinion that the payment of two-thirds of that amount to counsel was not justified. To say the least, it looks as if defendant had determined that the widows of the victims of his intestate's wrongful and unlawful act should receive nothing for the loss which they had sustained at his hands.

[8] While, for the reasons set forth, I am of the opinion that plaintiff's claim is not entitled to share in the assets with debts due by simple contract, provided for by the statute, I am of the opinion that, after these debts were paid, he held the balance subject to the judgment in this action.

Judgment may be drawn that the plaintiff, Sara Wellman, recover of defendant, John C. Bethea, personally, $250, with interest from January 7, 1913, and the balance of the cost incurred herein.