HITCHCOCK, *Administrator*, *Appellant*, v. MOSHER et al.

### DIVISION ONE.

1. **Administrator**: COMMISSIONS: STATUTE. An administrator under Revised Statutes, 1879, section 229, is not entitled as compensation for his services to commission on the real or market value of all the personalty belonging to the decedent at the time of his death, but upon the value of the personalty administered by him,

2. ——: ——: ——. A decedent held contracts from brokers for the sale to him of certain railroad stock. He had not demanded its delivery, and at the time of his death it was in the possession or under the control of the brokers, and the larger part of the purchase price was unpaid. The administrator obtained from the probate court an order for the sale of the stock, and the brokers sold it and from the proceeds deducted the balance of the purchase price of the stock and delivered the remainder to the administrator. *Held*, that the administrator was entitled to commission only on the amount left after payment of the balance due on the purchase price of the stock.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*G. A. Madill* for appellant.

There can be no doubt that by the contracts in question Dorriss became the legal owner of the stock, subject to the claim of Mathews and Whitaker for so much of the purchase money as remained unpaid. *Markham v. Jaude*, 41 N. Y. 235; *Baker v. Drake*, 66 N. Y. 518. This title of ownership necessarily devolved on the administrator. The exceptants failed to distinguish between the legal title of the pledgor in the thing pledged and the residuum or surplus coming into the hands of an administrator after the foreclosure of a

mortgage or execution of a trust over the amount secured thereby. As to definition of "assets" of a decedent, see Story's Eq. Jur., 531; *De Valengin v. Duffy*, 14 Pet. 282 ; *Thurston v. Lander*, 40 Me. 197 ; *Thurston v. Doane*, 47 Me. 79.

*Samuel N. Holliday* and *Joseph G. Holliday* for respondents.

(1) Chattels pledged by a testator are assets in the hands of the executor for so much as they are worth beyond the sum paid on their redemption. 3 Williams on Executors [ 6 Am. Ed.] top pp. 1754, 1758 ; *Glaholm v. Rowntree*, 6 Ad. & El. 710 ; *Vincent v. Sharp*, 2 Stark. N. P. E. 507 ; *United States v. Cutts*, 1 Sumner, 133 ; *Hawkins v. Lawse*, 1 Leonard, 154 ; 2 Lomax on Executors & Adm'rs, 227 ; Schouler on Executors & Adm'rs, 203 ; *Ball v. Brown*, 1 Bailey's Eq. Rep. 374 ; *Martin's Estate*, Myrick's Prob. Rep. 163 ; *Reynolds v. Canal Co.*, 30 Ark. 520 ; *Succession of Powell*, 14 La. Ann. 638 ; *Succession of Fontelieu*; 28 La. Ann. 638 ; *Shaefer v. Cross*, 13 La. Ann. 110 ; *Baucus v. Stover*, 31 Sup. Ct. ( N. Y.) 109 24 Hun ; R. S. Mo. 1889, sec. 68. (2) Neither the title to this stock, nor the possession, nor the right of possession was ever in Dorriss or his administrator. *Bank v. Richards*, 74 Mo. 77 ; s. c., 6 Mo. App. 454 ; *Gaty v. Holliday*, 8 Mo. App. 118. (3) The order of the probate court authorizing the administrator to sell this stock was not authorized by law, was illegal, and it did not have the effect claimed by the administrator; that is, it did not deliver the stock into the possession of the administrator, and it did not make assets of the estate of what was not assets before. *Ice Co. v. Stafford*, 3 Woods, 94 ; *Bompart's Adm'r v. Lucas*, 21 Mo. 598 ; *Abernathy v. Moore*, 83 Mo. 65 ; *Smith v. Gilmore*, 13 Mo. App. 155 ; *Powers v. Blakey*, 16 Mo. 437.

BRACE, J.—George P. Dorriss entered into five several contracts with Mathews & Whitaker of St. Louis, for eleven hundred shares first preferred stock of the St. Louis & San Francisco Railroad Company, one dated July 15, 1882, for two hundred shares at $19,225, being ninety-six and one-eighth net; one dated July 19, 1882, for two hundred shares at $19,025, being ninety-five and one-eighth net; one dated July 22, 1882, for one hundred shares at $9,562.50, being ninety-five and five-eighths net; one dated July 29, 1882, for five hundred shares for $50,062.50, being one hundred and one-eighth net; and one dated August 19, 1882, for one hundred shares at $9,762.50, being ninety-seven and one-eighth net.

These contracts are in the same form, the following being a copy of the first in date.

"Two hundred shares St. Louis & San Francisco first preferred.

"St. Louis, Mo., July 15, 1882.

"We have sold to Geo. P. Dorriss two hundred shares St. Louis & San Francisco railway preferred stock for $19,225 (ninety-six and one-eighth net); payable and deliverable on call, or before ninety days from date, with interest at the rate of six per cent. per annum, either party having the right to call for deposits of ten per cent. during the pendency of this contract. And, on the failure of the party called upon to comply with the calls for deposits or payment, this contract shall mature with the right and authority to the party not in default to close the contract by buying in or selling out the security for account of defaulting party either here, New York or elsewhere, as will probably be most advantageous to defaulting party. All dividends or extra dividends declared during time shall belong to the purchaser.

"MATHEWS & WHITAKER."

Three hundred shares of the stock were sold by Mathews & Whitaker for account of Dorriss during his lifetime, and there was to his credit on the books of Mathews & Whitaker on account of the stock embraced within said contracts about $30,000 at the time of his death. No stock was ever delivered by Mathews & Whitaker under said contracts to Dorriss, or to the appellant, Henry Hitchcock, the administrator with the will annexed of said Dorriss. The administrator inventoried the contracts, noting the fact that three hundred shares had been sold as aforesaid ; afterwards presented a petition to the probate court praying for an order for the sale of the remaining eight hundred shares, and thereupon said court made an order authorizing and directing said administrator "to sell the said eight hundred shares of the first preferred stock of the St. Louis & San Francisco Railroad Company embraced in the said several contracts, or 'brokers' sold notes,' and out of the proceeds of such sale pay to said Mathews & Whitaker that portion of the purchase money for all of said stock together with interest which remains unpaid."

It appears that, when the order was made, the respondents, who are legatees of said Dorriss, appeared by their attorneys in the probate court, consented to and signed the said order, as did also the said Mathews & Whitaker. Thereafter the said eight hundred shares were sold by the said Mathews & Whitaker on change in New York under the directions of Mr. Hitchcock, the administrator, the sales realizing the sum of $77,050, of which amount $52,862.85 was applied by Mathews & Whitaker to the payment of their account for the balance of the purchase money and interest on said shares of stock under said contracts, and remainder was accounted for and paid to the administrator. The administrator, in his first annual settlement, charged himself with said sum of $77,050 and took credit for said

sum of $52,862.85, and for $2,643.14, five-per-cent. commission thereon. On final settlement in the probate court, the respondents (among other exceptions which need not be noticed) excepted to said credit for commissions, their exception was overruled, and the credit of $2,643.14 allowed the administrator as commission as aforesaid, and respondents appealed to the circuit court; in the circuit court the credit was disallowed, and the administrator appeals to this court.

By statute, executors and administrators are entitled as "compensation for their services and trouble to a commission of five per cent. on personal property, and on money arising from the sale of real estate." The learned counsel for the appellant concedes that the administrator is not by the terms of the statute entitled to commissions on the real, .face or market value of all personal property belonging to the deceased at the time of his death, but upon the value of the personal property of the deceased by him administered, the value which it has for the purposes of administration, for the beneficiaries of the estate, whether creditors, legatees or distributees, when administered. This construction of the statute is correct. "If a decedent leave personal property worth $200,000 pledged to secure a debt of $190,000, and it is sold by the pledgee and realizes enough to pay the debt and leaves a surplus of $10,000," which is paid to the administrator, evidently the statute does not mean that the administrator is entitled to retain the $10,000 for his commission on the $200,000." It means that he is to receive five-per-cent. commission on the assets belonging to his decedent actually received by him *virtute officii* and properly paid away by him in the course of his administration. The claim for commission in the case in hand is hardly so strong as in the hypothetical one quoted from the opinion of the learned trial judge who ruled against it.

George P. Dorriss, when he died, did not have eight hundred shares of stock in the St. Louis & San Francisco Railroad Company; what he did have was the contracts aforesaid of Mathews & Whitaker to deliver to him on the payment of the several sums of money, as therein specified, eight hundred shares of such stock. These contracts were the assets of his estate that came to Mr. Hitchcock as administrator, *virtute officii*, for the value of which he was chargeable, and, on which value when accounted for, he was entitled to commission. For more than this value he could not have been called on to account to the beneficiaries of the estate, and for more than this value he ought not to be allowed commission. These contracts were the assets administered for the benefit of the estate; they never produced eight hundred shares of stock, or the value of those shares, for the benefit of that estate. No such stock was administered on; none was, or could have been, sold by the administrator for the reason that he had none to sell. If Mathews & Whitaker had in their possession or under their control eight hundred shares of St. Louis & San Francisco Railroad Company stock to meet their obligations under these contracts, they bought them on their own account, and not on account of Dorriss; they were the owners of such stock and could have sold them whenever they pleased. The obligation of their contract only required that when they were called, and paid, for by Dorriss or his administrator under the terms of the contract, they should have eight hundred shares of such stock on hand ready for delivery, or be prepared to respond in damages for the difference between the contract price and the market value of the stock when called.

They were never called for or delivered. They never became the property of the estate, and Mathews & Whitaker never became beneficiaries or creditors of the estate for the amount of purchase money that would have been due them therefor if they had been delivered.

That the administrator and Mathews & Whitaker chose to assume that Dorriss and Mathews & Whitaker sustained the relations of pledgor and pledgee of certain specific shares of stock, and thereupon obtained an order of the probate court authorizing a sale thereof by the administrator, could not change the real relations they sustained to each other in these contracts. Nor could such order made with the assent of the legatees vest in the administrator title to or control over any specific shares of stock belonging to Mathews & Whitaker; the most that can be claimed for this proceeding is that it was a waiver of specific performance of the contract by all the parties in interest, and their consent that the deal be closed out, by a sale by Mathews & Whitaker, at such time as the administrator should direct, of the number of shares of stock called for by the contracts, and an accounting to the administrator for the amount that the estate would have realized therefrom had the contract been actually performed, and the sales thereafter made at such times by the administrator. Under this agreement Mathews & Whitaker sold eight hundred shares of their St. Louis & San Francisco railroad stock; of the proceeds of such sales, they passed to their own credit the sum of $52,862.85 on account of this deal, and accounted for and paid the remainder, including the amount of dividends which the estate would have been entitled to under the contracts, to the administrator. This remainder was in fact the full value of the only assets that came into the hands of the administrator under and by virtue of these contracts, and upon the amount of such remainder only was he entitled to commission; with that amount was he only properly chargeable; and that amount he could properly disburse only to the beneficiaries of the estate.

Mathews & Whittaker never were beneficiaries of the trust funds held by the appellant as administrator, and he had no authority to make a disbursement to them out of such funds. He never received in the

course of the administration funds chargeable with such a demand, nor was such a demand against the trust funds in his hands ever established, or paid by him. By charging himself with the gross amount of the sales of stock, and taking credit by the amount retained by Mathews & Whitaker, an appearance is given of having administered upon an estate of a value in excess of the estate actually administered upon, to the extent of that credit, but it is an apparition only. We think the circuit court did right in disallowing commission on a value which never had an existence for the beneficiaries of the estate, or at all, save in the account of the administrator, where it appears for an instant on the debit, only to vanish in the same instant on the credit side of that account; it is an estate too ghostly and impalpable to bear the burden of such commission.

The judgment of the circuit court is affirmed. All concur. '