Glover v. Holliday.

---

GLOVER, *Executor, Appellant,* v. HOLLIDAY, *Curator.*

DIVISION ONE.

---

**Executor: COMMISSIONS: APPEAL.**   The finding of the trial court that an executor was entitled to commission on stocks of the estate at a valuation of $300 a share, there being evidence to support such valuation, will not be disturbed.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

AFFIRMED.

*John M. Glover pro se.*

The evidence shows that the stock was worth $388 per share, and the commissions of the executor should have been allowed on that valuation. It is palpable also on the face of the record that there was no variation in the intrinsic value of the stock between the first day of February, 1886, and the sixth day of December, 1886, the period covered by the above transfers.

*Boyle, Adams & McKeighan* and *S. N. Holliday* for respondent.

(1) When a case is submitted to a court, and a jury dispensed with, the facts upon which the court bases its judgment are incontrovertible in supreme court. *Hamilton v. Boggess,* 63 Mo. 233; *Gaines v. Fender,* 82 Mo. 497. (2) In civil law cases, even where there is a conflict of evidence, the verdict of the jury will not be disturbed by the supreme court. *Moore v. Davis,* 51 Mo. 233; *Oldham v. Henderson,* 4 Mo. 295; *Holliday v. Atterbury,* 22 Mo. 512. (3) It is the recognized rule of the supreme court, in equity cases, to defer much to the conclusion reached by the trial judge on a matter of fact, especially where there be any material conflict of evidence. *Springer v. Kleinsorge,* 83 Mo. 152; *Chouteau v. Allen,* 70 Mo. 336; *Chapman v. McIlwrath,* 77 Mo. 43; *Boyle v. Jones,* 78 Mo. 403; *Smith v. Allen,* 86 Mo. 178, 189; *Bank v. Murray,* 88 Mo. 191. The finding of the circuit court of a question of fact in a case of final settlement of an estate, appealed from the probate court, where there is

no material conflict of evidence, will not be disturbed by the supreme court.   See foregoing authorities.

BRACE, J.—The appellant was executor of Harriet P. Charpiot, deceased.   Among other assets of said deceased, there came to his hands, as such executor, one thousand and eleven shares of the capital stock of the Kansas City Gaslight & Coke Company, of the face value of $100 per share.

On the thirteenth of March, 1886, in pursuance of an order of the probate court, the executor turned over to the respondent, as curator of Thos. H. and Chas. R. Pratt, minor distributees entitled thereto under the will of said deceased, said shares of stock.

The executor, in his first annual settlement, made on the fourth day of January, 1887, with the probate court, took credit for commissions on the value of this stock at the rate of $388 per share.   On his final settlement, the respondent, curator as aforesaid, filed an exception to this credit, which was sustained to the extent of the commission on $88 per share of such credit, and the appellant allowed commission on a value of only $300 per share for such stock.   From this allowance the respondent appealed to the circuit court, where upon a trial *de novo* commission was allowed the executor on the same value for said stock as was allowed by the probate court, that is to say, on a value of $300 per share, and judgment rendered accordingly against the executor, from which judgment he appeals to this court.

The only question in the case is one of fact; and that is, what was the value of this stock on the thirteenth of March, 1886?   The evidence tended to prove that from the organization of this company in 1873, up to and including the year 1886, the stock paid an average annual dividend of eleven and eleven-four-

teenths per cent. per annum; that prior to March 13, 1886, no sales of the stock had been made at a higher price than $225 per share. It seems that about this time the United Gas Company was desiring to get control of this stock, and on the nineteenth of March some of the shareholders, including the respondent, formed a pool of their stock to bull the market; that a sale of three shares was afterwards made on the nineteenth of April at $225, and on the same day the curator was offered $300 per share for this stock by said gas company; that about the twenty-second day of May thirty-five shares were sold at $400 per share, and sixteen shares at $750 per share; and on the twenty-sixth of May, five days before the election of directors, eighty-six shares more were sold at $750 per share. The evidence does not disclose further sales until December 5, 1886, when the respondent disposed of the stock at $388 per share. Three witnesses, familiar with the market value of this stock, testified that prior to the fourteenth of March it was not worth on the market more that $200 per share.

The judges of the probate and circuit court, before whom this issue was tried, and each of whom was doubtless acquainted with the witnesses who testified before them, orally, and from their locality, familiar with the conditions and business methods affecting the real value of this character of property, and in a more favorable position for weighing the testimony than we are, having each reached the conclusion that $300 per share was a fair estimate of the value of this property to the estate when it was turned over by the executor, we find nothing in the facts as they appear in this record to warrant us in disturbing their judgment.

The judgment of the circuit court will, therefore, be affirmed. All concur.