In re Estate of TAYLOR PURL, Deceased. W. L. GUP-
TON, Executor, Appellant, v. INEZ CARR, Re-
spondent.

**St. Louis Court of Appeals.  Argued and Submitted January 5, 1910.
Opinion Filed February 1, 1910.**

1. **APPELLATE PRACTICE: Issues not Presented Below.** The
   Court of Appeals, in cases involving the allowance of an ex-
   ecutor's claim for compensation, will determine such issues only
   as were before the trial court.

2. **BANKS AND BANKING: Private Bank: Not Quasi Corporation.**
   A private bank carried on by an individual is not a quasi cor-
   poration under the banking law.

3. ———: ———: **Death of Banker: Probate Court Has Jurisdic-
   tion of Assets.** Where the owner of a private bank dies, and
   the bank is solvent, the Secretary of State has no authority,
   under section 1305, Revised Statutes 1899, to step in and
   administer the affairs of the bank through a receiver; the pro-
   bate court having sole jurisdiction.

4. ———: ———: **Depositors General Creditors of Bank.** The
   depositors in a private bank, the sole owner of whose assets
   died, were general creditors of the bank, and had no special
   lien on the funds thereof.

5. ———: ———: ———: **Executor Entitled to Possession of
   Funds.** The deposit funds of a private bank went, on the
   death of the banker, who was sole owner of the assets, into his
   estate, his executor being the only person entitled to take
   possession of such funds and distribute them to the creditors
   of the bank

6. **EXECUTORS AND ADMINISTRATORS: Commissions.** An exe-
   cutor or administrator is entitled to commission on all the
   personal property of the estate which came into his hands
   and for which he has accounted without default and in ac-
   cordance with the law.

7. ———: ———: **Executor Entitled to Commission on Disburse-
   ments of Private Bank Funds.** An executor who pays out funds
   of a private bank, which was owned solely by his testate,
   to the depositors thereof, is entitled to commission on such
   payments, although the claims had not been presented to the
   probate court for allowance.

8. ———: ———: ———: Estoppel: Agreement of Distributee. A distributee of an estate, who entered into an agreement whereby the executor was authorized to pay the depositors in a private bank, which was owned by the testator, from the funds of said bank, was estopped to assert the executor was not entitled to commission on such disbursements because the claims of the depositors were not presented to the probate court for allowance.

Appeal from Montgomery Circuit Court.—*Hon. Jas. D. Barnett*, Judge.

REVERSED AND REMANDED (*with directions*).

*Ball & Ball* for appellant.

As to the jurisdictional question, we insist that the will of the deceased gave his executor jurisdiction of the subject-matter, and it authorized him to conduct and manage the affairs of his private bank to the best advantage of his estate, and there is no question but that it was so managed. "Both at law and equity the whole personal estate of the deceased vests in the executor." Hounson v. Moore, 18 Mo. App. 410. The executor was rightfully in possession of the banking interest of the decedent, because the title to the personalty vests in him, Langston v. Canterbury, 173 Mo. App. 131. This same doctrine is upheld in 209 Mo. 494, and in the 124 Mo. App. 243. "The law looks to substance (results) rather than mere form." The objection to the item of commission of five per cent on the amount paid the 213 depositors should have been found in favor of the executor, as it is clear from all the record that although the 213 vouchers paid to as many parties were not allowed against the estate, as provided in sec. 224, yet at the time credit therefor was taken in his settlement, exceptor was urging payment to all, and now says the payment thereof by the executor was proper, thus bringing these credits within the terms of sec. 224, R. S. 1899. And the evidence in this court shows that all of them were legal demands against the estate, and the executor has paid them. Jacobs v. Jacobs, 99 Mo. 435.

*E. Rosenberger & Son* for respondent.

(1) the probate court had no jurisdiction to wind up the affairs of the Exchange Bank of Jonesburg, it being a private banking institution operating under secs. 1298, 1299, 1300, and 1301 R. S. 1899. The proper method to wind up the affairs of a private banking institution is by having a receiver appointed by the circuit court. After the receiver has wound up the affairs of the private banking institution, the surplus remaining over, if any, should then be paid to the executor and the net assets then, for the first time, become a part of the general estate. (2) An executor is only allowed to take credits for such sums as he has paid out in a legal manner, and is not allowed to pay claims and take credit therefor unless the claim has been legally allowed. In re Garrison v. Trust Co., 77 Mo. App. 333; Grocer Co. v. Walton, 95 Mo. App. 526; Hitchcock v. Mosher, 106 Mo. 578; Langston v. Canterbury, 173 Mo. 122.

STATEMENT.—Taylor Purl carried on the business of a private banker, having complied with the requirements of section 1299, of the Revised Statutes of 1899, as amended by Act of March 24, 1903, Laws 1903, p. 117, by filing with the Secretary of State the certificate required by that section. The capital invested was stated to be five thousand dollars, and the banking business was to be carried on under the name of the Exchange Bank of Jonesburg, Missouri. He was the sole owner of the bank and remained so until the day of his death, which latter event occurred about December 28, 1905. Mr. Purl made and executed a will, which was duly admitted to probate by the probate court of Montgomery county, December 29, 1905. By this will he directed that the executor named should at his death take charge and control of all of his property and out of the proceeds pay all his just debts, including funeral and cemetery

expenses. By the second clause he bequeathed and devised to his only daughter, Inez Purl Carr, all of his property remaining after the payment of debts, Inez Purl Carr, being his only heir and, as noted, sole legatee. The will appointed William L. Gupton executor. A codicil added to the will December 7, 1901, and duly probated with it, recited that as the testator had sufficient property other than his private banking institution, to pay any and all of his debts, it was his will that the business of the bank be continued after his death under such management as his executor might select and until such time as the bank might be sold or otherwise disposed of to the best interests of the depositors therein, the executor to act at all times under the direction of the state banking department of the State of Missouri. It appears that the executor filed two inventories of the estate, what is called inventory number 1 being of what is designated the private estate of the testator other than the Exchange Bank. This is not set out in the abstract. Inventory number 2 is of the assets pertaining to the banking business, setting out not only the assets of the Exchange Bank, appraised at the sum of $42,152.-03, but also its liabilities due 213 depositors, amounting to $37,687.55, and unpaid drafts $341.78, making a total of $38,029.33 indebtedness on account of the Exchange Bank. It appears by the abstract of the evidence in the case, as well as by the admissions of counsel for the respondent before the court, that it was found impracticable on the death of Taylor Purl for the executor to carry on the private banking business as executor; accordingly a new bank with a capital of $10,000 was organized and incorporated, Mrs. Inez Purl Carr becoming the owner of $9000 of stock in the bank.

It further appears that on January 2, 1906, the executor presented a petition for order of sale, at private sale, of the personal property of the bank, "including assets, good will, safe, furniture, books and other personal property belonging to said bank." This was ap-

proved and order for sale entered same day. He also on the same day presented a petition for order of sale at private sale, of the personal property of the estate not pertaining to the bank. This was approved and sale ordered same day.

On January 15th the executor reported that he had sold the bank assets for $34,918.30, to the "Exchange Bank of Jonesburg" (that being the name of the new corporation, the private bank having been known as "Exchange Bank of Jonesburg, Missouri"), for $34-918.30. The report proceeds: "And the said Exchange Bank of Jonesburg, having complied with the terms of said sale and paid to me the said sum of $34,918.30, the said property was sold, turned over and delivered to it, the said Exchange Bank of Jonesburg." This was approved by the probate court January 15, 1906, the executor being ordered to take proper receipts for the $5000 from Mrs. Carr.

On January 16th the executor reported sale of property belonging to the estate outside of the bank to Inez Carr for $551. This was approved on that date. On the same date the executor presented a petition "for order of partial distribution of the assets of said estate, to-wit: Inez Purl Carr, the only heir-at-law and only legatee of the said Taylor Purl, deceased, in the sum of $5000." The petition was granted January 16th and the $5000 ordered distributed and paid to Inez Purl Carr.

The discrepancy between the $34,918.30, for which the assets are reported sold and $42,152.03, the appraisement value of the bank assets, $7233.73, is said by counsel to be covered by "cash and cash assets," which is probably correct, but there is no explanation of it in the record. No point is made on it however. It appears also by statement of counsel at bar, that the executor deposited the whole fund, $42,152.03, in the new bank, checking out against it amounts due the depositors of the bank, it appearing that there were 213 checks for that number of depositors, and that he also took care of

or paid the outstanding drafts, six of them, amounting to $341.78, thus turning over to the creditors of the bank $38,029.33. Thus all of the assets of the bank, consisting of notes, checks, school warrants, currency, etc., appear to have passed through the hands of the executor, amounting, as before said, to $42,152.03.

A summary of the first settlement, filed and approved December 28, 1906, shows the total amount of assets of the bank at the death of the deceased by the inventory to be $42,152.03, due depositors, $37,687.55. These depositors were reported paid in full in this first settlement. The recapitulation of the first settlement showing:

"By amount paid depositors,
    vouchers 1 to 213 ......... $37,687.55
By amount paid drafts, vouchers
    214 to 219 ................  341.78
Total vouchers filed ..........            $38,029.33
Balance after paying depositors
    and drafts................            4,122.70"

The above balance was carried forward as an additional charge to the inventory of the estate outside of the bank, and along with this settlement, covering the bank, and on the same date appears the first annual settlement of the estate, "on account of the personal estate of said deceased other than the private banking institution of said deceased, known as the Exchange Bank of Jonesburg, Mo., together with the balance of money remaining after the payment of all the liabilities of said Exchange Bank.

"To amount of personal estate as
shown by inventory ......... $4,408.93
Balance in hands of executor after
payment of liabilities of Ex-
change bank .............. 4,122.70

Total ...................... 8,531.63
Vouchers 1 to 20 inclusive and in-
cluding probate court costs in
various amounts therein in the
sum of ................... $6,385.02
By amount paid executor on ac-
count of service ............ 200.00
Balance in hands of executor..... 1,946.61

Total ..................... $8,531.63

Recapitulation.

Amount of inventory and balance
from Exchange Bank........ $8,531.63
Vouchers filed ................              $6,585.02
Balance ......................              1,946.61

$8,531.63  $8,531.63"

This settlement appears to have been duly verified.
Following the recapitulation as above is this: "De-
cember 28, 1906: W. L. Gupton, executor of the estate
of Taylor Purl, deceased, presents first annual settle-
ment of said estate. The items of expenditures are ap-
proved and allowed. Said settlement showing a balance
due the estate in the sum of $1,946.61 is approved and
ordered filed and recorded." Whether this approval
covers both settlements is not very clear. Nor is it clear
whether these were treated as one settlement. We have
stated the facts as they appear on the abstract, which
is agreed to by counsel on each side as a complete and
correct abstract. The executor exhibited his final set-
tlement to the probate court of Montgomery county,
on date not given, of which the abstract is as follows:

|  | Cr. | Dr. |
|---|---|---|
| "To am't due estate as per inventories filed .. ........ |  | $46,560.96 |
| By am't paid out as proper credits in first annual settlement filed herein ........ | $44,614.35 | $44,614.35 |
| To am't balance due estate for this settlement ........... |  | 1,946.61 |
| By am't 10 vouchers lumped herein down to and including Probate Court fees and docket fees .. ......$ | 884.69. |  |
| By am't 5 per cent ex'r com. on $45,426.42..$2,271.32 |  |  |
| To am't 5 per cent com. on sum $4,000 ..$ 200.00 |  |  |
| $41,426.42    $2071.32 | $ 2,071.32 | $ 2,956.01' |
| By am't bal. due ex'r to complete this settlement .. .. .. .. ..................$ 1,000.40" |  |  |

It will be noted that in this final settlement, the. executor claims commission of 5 per cent on $49,426.42, that being claimed to be the value of the personal property and money of the estate, both in and outside of bank, which had come into his hands as executor. In due time the respondent, Mrs. Inez Carr, presented exceptions to this settlement, which as set out in the abstract are substantially as follows: That the personal estate of Taylor Purl, outside of the bank, was $4408.93; that the net assets of the bank amounted to $4122.70, so that the total personal estate amounted to $8531.63; that $792.76 of this is unavailable, and for which the executor is entitled to credit, leaving net $7738.87, and that this amount is the amount for which disbursements

had been made and allowed according to law, and this is the amount on which it is admitted by exceptor that the executor is entitled to a commission of 5 per cent; that the bank was indebted to its depositors in the amount of $37,687.55, and there were unpaid drafts outstanding amounting to $341.78, total of $38,029.32. That the executor asks credit of 5 per cent commission on $37,687.75, amounting to $1884.38, "and that this item of $1884.38 is the item to which this exceptor excepts, and she says that this executor is not entitled to a commission of 5 per cent on such sum of $37,687.55, being the amount the Exchange Bank owed to its depositors, for the reasons following: First and second, no claims of any of the depositors were ordered paid or allowed by the probate court. Third, the item of $37,687.55 was never ordered paid by the probate court or allowed by that court as a demand against the estate of Taylor Purl, deceased. Fourth, the executor is only allowed a commission of five per cent on such claims for which disbursements have been made which have been allowed by the court according to law. Fifth, because the executor in paying the disbursements of the Exchange Bank without an order of the court, without the claims having been allowed as demands, did so without authority and at his own risk and is not entitled to any commissions on any such claims. Sixth, the act of the executor in paying the claims without an order of the court was unauthorized and done by the executor at his own risk and peril. Seventh, because under the laws of Missouri an executor is only allowed a commission on disbursements which have been ordered by the court on claims regularly allowed according to law, and the claims of these depositors were not allowed according to law. Eighth and finally, "because the probate court and executor were wholly without jurisdiction of the subject-matter in attempting to settle the affairs of the Exchange Bank, and the affairs of the Exchange

147 App—8

Bank should have been settled by the circuit court appointing a receiver thereof and turned the assets over to the executor, or all of the claims of the depositors should have been regularly allowed as demands against the estate as provided by law." The probate court found that the executor was entitled to charge a commission of 5 per cent on $7738.87 only and made an order reforming the settlement accordingly. On appeal by the executor to the circuit court and a trial there *de novo,* the above facts were in evidence, the inventories, orders, settlements and so on being introduced. A paper which reads as follows was also offered and read in evidence by the executor.

"Know All Men by These Presents That we, Inez Carr, formerly Inez Purl, daughter of Taylor Purl, deceased, and Chas. Carr who are husband and wife, being the legal and sole and only heirs of said Taylor Purl, deceased, late of Jonesburg, Montgomery county, Missouri, do hereby authorize and empower W. L. Gupton, the executor of the estate of said deceased, to pay to the several depositors on demand by check or otherwise in writing, any and all funds such depositors may have in the private bank of said deceased known as the Exchange Bank of Jonesburg, he to take proper receipts and vouchers therefor, and we hereby bind ourselves to preserve him, the said W. L. Gupton, as such executor or individual, harmless from any loss in consequence thereof. This January 2, 1906.

"INEZ C. CARR,
"CHAS. CARR."

This, when offered, was objected to by counsel for respondent for the reason that the executor can only be allowed a commission of five per cent on claims for disbursements which have been made and allowed by the court in accordance with law. The objection was overruled and the paper read in evidence. An agreed statement also introduced practically covered the above

facts.  At the conclusion of the trial, the court rendered judgment in favor of the exceptor, respondent here, and found that the executor was entitled to retain as his total commission "for acting as the executor of said estate, the sum of $386.95 and no more;" and that there is a balance due by the executor to Inez Carr, sole heir and distributee, $874.91.  Judgment was accordingly rendered.  The executor filed a motion for new trial, which was overruled and exceptions being duly saved and an appeal duly perfected, the case is before us on appeal by the executor.

REYNOLDS, P. J. (after stating the facts).— In the brief and argument of the learned counsel for the respondent, submitted to us when this case was heard at bar, those counsel have said that it is conceded "that the sole and only question for this court to determine is whether under the facts stated, the appellant is entitled to a commission of five per cent on the sum of $37,687.55 which he paid unto the two hundred and thirteen depositors of the Exchange Bank of Jonesburg. Respondent however denies that the executor is entitled to any such commission on said sum, and her objections thereto may be summarized as follows:

"First.  That the probate court had no jurisdiction to wind up the affairs of the Exchange Bank of Jonesburg; and, second, That if it did have jurisdiction, before the executor is entitled to a commission on demands paid, the creditor of the estate must have his demand duly allowed, adjudicated and classified by the probate court."

Counsel then argues, first, that on sections 1298 to 1303, Revised Statutes 1899 (the Banking Law), the probate court had no jurisdiction over the funds in the bank.  As their second proposition, they argued that the executor is not entitled to any commissions on the bank funds paid out, because the demands against the bank, evidenced by the checks, were not presented to

and allowed by the probate court. These practically follow the exceptions lodged in the probate court.

Referring to the paper read in evidence and which we have copied in our statement, that is the agreement between Mrs. Carr and the executor, counsel, in this first brief and argument, say that it should not have been admitted because "foreign to the question of the right of the executor to retain a commission. Had respondent excepted to the credits claimed by the executor by reason of his having paid the depositors, the paper then would become relevant. But in this proceeding the paper throws no light upon the issues. At most it merely protected the executor by reason of paying the depositors; but it could convey no jurisdiction upon the probate court, if the court had none." We call attention to these arguments and solemn admissions of counsel for the respondent, lawyers learned in the law, in order to emphasize exactly what issues were before the probate court and the circuit court and brought to us, as those issues were defined by counsel themselves in their printed brief as well as by oral argument. For, having obtained leave to file a supplemental brief, with that before us, we are obliged to say that they now attempt a departure from the issues which they have so distinctly avowed were the issues in both of the courts of first instance. In this supplemental argument and brief, filed with us after submission of the case, counsel for respondent for the first time advance this position: That "where an executor voluntarily, before final settlement, pays a legatee or creditor more money than would be due such legatee or creditor on final settlement, the loss must fall on the executor," and in support of this position it is said that in reviewing this settlement, this court will determine the issue as though it was sitting as a probate court, and that the record shows that the executor voluntarily paid this legatee five thousand dollars; that when he made his annual settlement there was a balance in his hands amounting

to $1946.61; that he made no claims for commissions on amounts paid depositors in his annual settlement, but in his final settlement he claims a balance due him from Mrs. Carr to complete his settlement, of $1000.40, and it is submitted that the probate court has no jurisdiction to render any judgment against the exceptor, Mrs. Carr, compelling her to pay back this $1000.40, or any other sum to the executor. In effect, that it was a voluntary payment by the executor, which counsel assert the court has no power to compel the legatee to refund.

Before entering upon a discussion of the case arising upon the exceptions, we will dispose of all the above by remarking that it is not within the exceptions, which, in a case of this character and class, may be called the petition which states the cause of action. No such issue was before either of the courts of first instance, and this court is not one of original jurisdiction, in cases of this class, and can and will determine only such issues as were before the trial courts. We have no power, even if we had the disposition, which we have not, to go outside of those issues and give any consideration whatever to this so manifest afterthought.

Returning now to the case as presented by the exceptions and taking up the first objection, which rests on the proposition that the probate court had no jurisdiction to administer on $37,657.55, the amount of the assets in the bank, which were due to the depositors or creditors of the bank, but could only administer on what remained of the bank assets after payment of these claims, we hold that the objection is not tenable. The death of Mr. Purl occurring in 1905, and the administration of his estate falling in between then and December 28, 1906, the banking law as in force prior to January 15, 1909, when the new law of March 18, 1907, took effect (Laws 1907, pp. 124, 150), is to be applied. Our statute, chapter 12, of article 8, Revised Statutes 1899, referring to it as in force before the adoption of the new chapter in 1907,

provides for the regulation of banks, section 1299 being amended by Act of March 24, 1903.  Section 1301 applied all the provisions of the article to private bankers, the latter section distinctly providing that the provisions of the article shall apply to the private banker, "so far as the same are applicable."  Section 1304, before the law of 1907, gave the Secretary of State visitorial right of examination, and section 1305 provided for the winding up of the affairs of a bank when the conditions set out in that section occur.

In Clifford Banking Co. v. Donovan Com. Co., 195 Mo. 262, 94 S. W. 527, our Supreme Court held that this section 1305 had no application whatever to the settlement of the affairs of a banking corporation which is solvent at the time its existence terminates by the limitation of its charter.  In this Clifford Banking Company case, the charter had expired and the affairs of the bank were taken in charge by the members of the last board of directors of the concern as trustees, they being such under the general statute relating to the winding up of corporations whose charters have expired by the last board of directors, they acting in liquidation as trustees.

In the later case of State ex rel. Hadley, Attorney-General, v. People's United States Bank, 197 Mo. 574, 94 S. W. 953, it is reiterated that the Secretary of State has no power to take upon himself the administration of the affairs of a bank, organized under the laws of the state, save in case of insolvency, as insolvency is defined by statute.  True, both of these cases were incorporated banks, but this section here construed is the only law giving any authority to the Secretary of State to proceed against any bank.

The evidence in this case shows, beyond room for cavil, that the private bank, known as the Exchange Bank, owned by Mr. Purl, was at the date of his death and taking over of the assets thereof by the executor of his will, entirely solvent.

The limitation of the law as construed in the two cases above cited disposes of the claim of any right in the Secretary of State to have gone into the circuit court, as it is argued he should have done, and applied for the appointment of a receiver, even if this Exchange Bank had been a corporation. Much less is there any such right when the institution, instead of being a corporation, is a private bank, owned by one individual, a banker sole. We cannot assent to the proposition advanced by counsel that a private bank, carried on by an individual, is *quasi* a corporation. The law, in subjecting the business of banking, when carried on by an individual, to state supervision, merely recognizes it as impressed with a public character, recognizes it as a business in which the public has an interest. In like manner and by like reasoning and for like cause, an individual engaged in operating a grain elevator for hire is recognized as engaged in a public employment, devoting his property to a public use and thereby subjecting himself to the control of the state. Munn v. Illinois, 94 U. S. 113, and kindred cases, *inter alia,* Merchants' Exchange of St. Louis v. Knott, 212 Mo. 616, l. c. 643, 111 S. W. 565, affords illustration of the application of this rule and uphold the application of the former. It might be sufficient to dispose of this proposition by saying that the case of a private banker —sole—dying, is not a case within the letter of the law, but we go further and hold that the individual banker solvent at the date of his death, sole owner of all the assets of the bank, is not within the spirit of the provisions of our state banking law, so as to warrant the Secretary of State to step in, and by the hands of a receiver, appointed by the circuit court, take upon himself the administration of the affairs of the individual banker. That is practically what respondent contends should have been done in this case. Moreover, if this is the effect of the banking law it has engrafted a marked exception upon our probate laws. By the lat-

ter, when the individual dies his whole personal estate certainly, often his real estate, passes so completely within the jurisdiction and exclusive power of the probate court of his county for the purpose of settlement and distribution, that the heir can take over the personalty only through the administrator or executor. But if counsel are right in their contention, if the estate of the decedent happens to be entirely in his bank, the probate court has no jurisdiction over it; the decedent could not even direct its disposition by will. If the legislators of the state had intended to make such a radical departure from our probate laws as would be involved by any such rule, they certainly would have said so in plain and unmistakable language. They have not done it even by indirection. We hold that under the law as then in force, the jurisdiction of all matters pertaining to the winding up of the estate of Taylor Purl, the taking over of all the assets thereof, was exclusively and entirely in the probate court of Montgomery county. Learned counsel for the exceptor argue against this with great force, however, going even further and earnestly contending that it was the duty, no less than within the power of the Secretary of State, on the death of Mr. Purl to have stepped in and taken over the affairs of the bank; that section 1305, in terms, provides that "whenever it shall appear to the Secretary of State that it is unsafe or *inexpedient* (italics those of counsel) for any such corporation to continue to transact business, . . . or that its continuance in business will seriously jeopardize the safety of its depositors," that it is his duty to do so. Without resting on the proposition that in the cases above referred to, our Supreme Court has held that this power rests in the Secretary of State only in cases of insolvency, it is a sufficient answer to the contention to say that as this section rests action so entirely within the discretion of the Secretary, it is certain that in the case of this banker's decease, the Secretary has not seen fit to

step in and take possession. It is fair to presume that he knew of the death of Mr. Purl, for it is in the case that he issued a certificate to the corporation organized for the very purpose of taking over the business of this bank. The result in this case is a complete justification for the non-action of the Secretary, for every depositor and creditor of the bank was paid off in full, at a minimum of cost, delay and trouble.

It is argued that the depositors had some special lien on these funds; that more than the relation of debtor and creditor existed between them and the bank. This is a mistake. These depositors were general creditors of the bank, even regarding the bank as something outside the estate of its sole owner; were not preferred or special creditors. [Kenneth Investment Co. v. Nat'l Bk. of the Republic, 96 Mo. App. 125, l. c. 144, 70 S. W. 173; Arnold v. Sedalia Nat'l Bank, 100 Mo. App. 474, l. c. 478, 74 S. W. 1038; O'Grady v. Stotts City Bank, 106 Mo. App. 366, l. c. 369, 80 S. W. 696; State v. Reid, 125 Mo. 43, l. c. 51, 28 S. W. 172.]

It is further argued that this money in the bank did not belong to the bank but to the depositors. This is more specious than sound. It was money held and of the estate of the decedent, and the fact that he owed it to some one else in no manner whatever took it out of his estate. His executor and no one else was the only person who was entitled to take possession of it and distribute it to the claimants, creditors of the bank, and when he took it into his hands as he did, it was just as much of the personal property and money of the estate as any of the so-called individual assets of the decedent. The case of Hitchcock v. Mosher, 106 Mo. 578, 17 S. W. 638, is cited and relied upon by counsel for each side. In that case the deceased had bought bonds through a broker, paying 10 per cent on their value, and after he died the broker, buying in the bonds, turned back to the administrator the 10 per cent the deceased had in them, the other 90 per cent belonging

to the broker and in no sense whatever were of the assets of the estate of the decedent. All the right or interest of decedent in the bonds was in ten per cent of their value. That case has no parallel whatever in its facts to the case at bar.

Counsel urge as a final argument against throwing the bank assets into the probate court, that the winding up of an estate in that court involves a delay of two years in the payment of depositors. It did not in this case, but even if it had, the delay of two years is one imposed by the law, and the argument of delay is not one that appeals to us; it is for the Legislature.

The second proposition as to right to the commission claimed, is somewhat more difficult of solution. That the assets of Taylor Purl in the bank were just as much of the assets of his estate as any other personal property he possessed, admits of no question. It might as well be claimed that there were two estates and that there should be two administrations or settlements of the estate of a merchant engaged in carrying on the business of a grocer, if at the same time he happens to be running a farm or doing any outside business in which his capital or labor is employed. The law commands that the executor taken into his hands all the personal estate of the testator, so that it is not alone his right but his duty so to do. There is provision in the law for but one administration of an estate, whether by the original executor or administrator or by one *de bonis non*. The separation of accounts which seems to have been carried on here, while possibly not improper, did not have the effect of dividing the estate of the decedent or its administration into two parts; making an inventory of one branch and a separate inventory of another, could not have the effect, in law, of dividing the decedent's estate into two parts or branches. It was as much the duty of this executor to collect and preserve the estate of the decedent invested in the banking business, as it was to collect that outside of the

bank. The executor here did this, and the total personalty collected—allowing for unavailable assets, was $49,426.42; of this amount all but about $4000 came to him of the assets of the bank; he paid out to the creditors of the bank the $37,681.55, turning over to the exceptor all the balance, less allowed costs, credits and commissions; in fact he seems to have distributed to the exceptor, sole heir and legatee, about $1000 more than, on this showing, and if he is allowed commissions claimed thereon, she was entitled to receive. That he has made the disbursements claimed is not disputed. That he was authorized by the exceptor and her husband, sole distributees, to pay out the $37,687.55, to the bank creditors, is not disputed. That the probate court did not allow the demands of those bank creditors is not disputed, although it is admitted that the executor reported this disbursement of $37,687.50 in his first annual settlement and exhibited vouchers for it and that the probate court passed and approved that settlement. What then is the law as applies to these facts, as to allowance of commission to the executor for this $37,657.55 disbursement? The statute, section 223, Revised Statutes of 1899, provides: "In all settlements of executors or administrators the court shall settle the same according to law, allow all disbursements and appropriations made by order of the court (as also for), legal advice and services, and collecting and preserving the estate, and as full compensation for their services and trouble a commission of five per cent on personal property and on money arising from the sale of real estate." Then follows section 224: "Upon every settlement, the executor or administrator shall show that every claim for which disbursements have been made has been allowed by the court according to law." It is over these two sections that this branch of the controversy turns. Prior to 1889, this section 224 read: "Upon every settlement the executor or administrator shall show that every claim for which disbursements

have been made has been allowed by the court according to law, *or shall produce such proof of the demand as would enable the claimant to recover in a suit at law."* [R. S. 1879, sec. 230.] Many cases, of which Jacobs v. Jacobs, 99 Mo. 427, 12 S. W. 457, and McPike v. McPike, 111 Mo. 216, 20 S. W. 12, are types, which arose under this section as it stood in the statutes of 1879, have held that independent of the allowance by the probate court of the demand, it was open to the executor or administrator to produce proof on final settlement that the demand paid by him, although not formally allowed by the probate court, was of such a nature that it could be proved and established by the claimant if he instituted an action at law against the estate, and it was held that when the executor or administrator showed that disbursements made by him but not previously allowed as claims by the probate court were of such a character that they could be established at law, he was entitled to credit for them and to his commission on them. But in the revision of the statutes of 1889, the words which we have italicized were eliminated and ever since the revision of 1889, the section has stood as it now appears and as we have before quoted it, as section 224, Revised Statutes 1899. It was at one time contended that the omission of these italicized words from the revision of 1889 was not justified by law; that no act of the Legislature had amended section 230 of the revision of 1879. This question, however, was put at rest by the Supreme Court in a decision by Judge VALLIANT in Langston v. Canterbury, 173 Mo. 122 (73 S. W. 151) where at page 130, he says that without questioning the authenticity of the revisions of 1889 and 1899, an examination of the files in the office of the Secretary of State shows the passage and approval of an act revising the chapter on administration as found in the revision of 1879, and which act shows that section 230 of the revision of 1879 was amended in the particular above indicated and as ap·

pears in the revisions of 1889 as section 223, and as section 224 in the revision of 1899. In this same case of Langston v. Canterbury, supra, it is held that under the law as it now exists, claims must be exhibited to the administrator, presented to the probate court for allowance and established by proof, and that until a claim has been so allowed by the probate court or established by judgment of the circuit or other court of competent jurisdiction and classified by the probate court, the administrator has no right to appropriate any of the assets of the estate in its payment, and inferentially, that he could not claim commissions on that much of the estate so not properly administered.

In Springfield Grocer Co. v. Walton, 95 Mo. App. 526, 69 S. W. 477, Judge BARCLAY, speaking for this court and after having with his usual care and particularity pointed out the change affected in section 230, Revised Statutes 1879, by the revision of 1899, holds (page 536) that so far as concerns the commissions due to the administrator, the trial court had limited them to his percentage upon disbursements which the court finally approved. Those which were not approved were held not entitled to be estimated in arriving at the administrator's charges, and Judge BARCLAY says that the trial court was correct in so holding. On the authority of these decisions it is claimed that the appellant here is not entitled to any commissions on these disbursements which he made on checks drawn against him, although the checks were presented by him in the probate court as vouchers to his first settlement, and show the expenditure of the $37,687.55. This first settlement was approved with this disbursement shown in it and with the vouchers showing its expenditure before the court, and under the law as it stood prior to the revision of 1889, upon the executor showing that these vouchers were correct and lawful charges against the estate which could have been established in an ac-

tion at law, he would have been allowed credit for the disbursement and of course his commissions thereon.

We have no statute limiting the commission of the executor or administrator to his disbursements on allowed claims, or measuring his allowances by his approved disbursements. Section 223, Revised Statutes 1899, is the only section covering commissions, and section 224, is the only section ever construed in connection with it when the matter of commissions is under consideration.

Recurring to the case of Springfield Grocer Co. v. Walton, supra, it is to be observed that there is no discussion by Judge BARCLAY of the proposition which he there announces, that the trial court properly limited the allowance of commissions to the administrator to a percentage upon his disbursements which the court had finally approved. Obviously what was in the mind of the court was the general doctrine that an administrator or executor, like any trustee, is only entitled to commissions or reward when he has faithfully and according to his trust or the law administered the estate. It is true there are dicta in one or two cases to the effect that the administrator shall receive his commission on the assets belonging to the decedent which came into his hands and were properly paid away or disbursed by him in the course of his administration, as see Hitchcock v. Mosher, 106 Mo. 578, l. c. 582, 17 S. W. 638. In Ladd v. Stephens, 147 Mo. 319, l. c. 335, 48 S. W. 915, it is said that "administrators are entitled to commissions on the actual value of the assets distributed by them," citing Glover v. Holliday, 109 Mo. 108, 18 S. W. 1133, and Hitchcock v. Mosher, supra. But there is no statutory provision which confines the commissions to the amount of the estate disbursed on allowed accounts. To hold that such was the law would entirely defeat an administrator or executor from any commission, if it so happened that there were no claims whatever against an estate and that the personal prop-

erty was distributed among the heirs without a sale. When we search for the underlying reason for refusing allowances of commissions on unallowed disbursements, it is not difficult to find. It rests on the broad rule that an unfaithful trustee shall not reap any reward springing out of his breach of trust, more particularly on the common sense proposition that an administrator shall not be allowed his commission on that part of the assets of the estate which he has paid out without authority of law or for which he has failed to account. He has committed a breach of trust and therefore is not entitled to commissions.

In brief, the executor or administrator is entitled to his commissions on all the personal property of the estate which came into his hands and for which, without default and in accordance with the law, he has accounted. This is so, not that the law itself makes any such provision, but because the courts, looking to the spirit of the law and having the estates of the dead under their care, will not allow him who has been guilty of maladministration to reap any reward therefrom.

Applying this rule to the facts in the case at bar, there is no suggestion whatever of any breach of trust or malversation on the part of this executor. On the contrary, it is admitted that his disbursements are all correct. It is admitted that he paid out the money to those creditors of the bank who were entitled to it. It is in the record that he made these payments under and in accordance with the agreement between him and Mrs. Carr, and her husband, the sole legatees and distributees of the estate, who moreover agreed to hold him harmless by reason of making the disbursement. It is also admitted that he paid out this amount to these creditors without requiring the creditors, depositors in the bank, to present their claims in the probate court for allowance. The exceptor does not seek to charge him with this disbursement. What she does do is to challenge his right to a commission on this dis-

bursement.    Admitting that it was unlawful on the
part of the executor, as such to have made these dis-
bursements without the previous authorization of the
probate court, does it lie in the mouth of Mrs. Carr, this
exceptor, who is the sole party in interest and the only
one complaining of the act of this executor, to do this;
to challenge the right of the executor to lawful commis-
sions on these disbursements?    We think not.    While
the disbursement was not authorized by any order of
the court, it involved neither a breach of trust or of
duty upon the part of the executor, nor did it involve
a misappropriation of the funds or any loss to the es-
tate.    The executor has faithfully accounted for every
dollar of the assets of the estate that came into his
hands.    This exceptor is estopped by her own agree-
ment from asserting the contrary.

This court, in Newton v. Rebenack, 90 Mo. App.
650, held that where a *cestui que trust*, who is *sui juris*,
has authorized her trustee to pursue a certain line of
conduct, she will be precluded from maintaining an ac-
tion against the trustee for breaches which he had com-
mitted and which breaches were induced by her direc-
tion and assent.    It is true that this rule is one usually
applied between a trustee and his *cestui que trust*, but
we know of no reason why under the facts in this case,
it does not apply as between this exceptor and the ex-
ecutor.    Without invoking the rule existing between
trustee and *cestui que trust* as entirely applicable to
the relation of executor and distributee, there is suffi-
cient analogy to those relations to make that rule apply
here.

It is true that the agreement between Mrs. Carr
and the executor makes no provision as to commissions,
nor does it in terms say that the claims of depositors
are not to be presented to the court for allowance.    But
who can doubt that but for the agreement this executor
would have compelled all the depositors in the bank
to have presented their claims to the probate court for

allowance. If that had been done, it is tacitly admitted
that the claims would have been allowed and the exec-
utor, beyond all question, would have been entitled to
his commission on them. It may be said that a persua-
sive inducement for this agreement may be found to
rest in the item of cost saved the estate by avoiding
the cost of having the claims allowed by the court to
each individual claimant. Be that as it may, this ex-
ecutor, having at the instance and with the assent of
the exceptor made these payments, this exceptor is es-
topped from now claiming that he is not entitled to the
commission allowed by law on all the money and per-
sonal assets of the estate which came into his hands as
executor, for it is clear that he has faithfully adminis-
tered upon all of them. We do not put our conclusion
on the ground that because these claims of the bank
creditors were claims which could or might be estab-
lished by an action at law, the executor is protected
in payment thereof and entitled to commission thereon.
The ground for any such conclusion fell, when section
224 was amended as in its present form by the revision
of 1889. We place our conclusion on the distinct ground
that the executor has faithfully administered all of the
estate, and having made the disbursement here under
consideration without previous allowance of the de-
mands by the probate court, but in consequence of and
in execution of the agreement between him and the ex-
ceptor, there has not only been no maladministration,
but the exceptor is estopped from claiming it as an
unlawful disbursement; and being a lawful disburse-
ment as against this exceptor, she is estopped from
denying to the executor the commission the law allows
on the assets of the estate which passed through his
hands and were in his charge, and all of which he has
faithfully administered.

The judgment of the circuit court of Montgomery
county is reversed and the cause remanded with direc-

tions to that court to overrule the exceptions to the final report of the executor, and further proceed according to law and as here pointed out. All concur.