In the ESTATE of Ruby Opal JONES, Deceased.

Nolan J. JONES, Administrator WWA, Plaintiff-Appellant,

v.

Brenda Kay JONES, Objector, Defendant-Respondent.

No. WD 33417.

Missouri Court of Appeals, Western District.

March 29, 1983.

Morran D. Harris, Osceola, for plaintiff-appellant.

R. Brian Hall, Gladstone, for defendant-respondent.

Before DIXON, P.J., and KENNEDY and LOWENSTEIN, JJ.

KENNEDY, Judge.

This is an administrator's appeal from a probate division order of final distribution which disallowed credit claimed by him for certain partial distributions and advancements, and which disallowed credit for one-half the cost of decedent's tombstone.

We affirm as to the disallowance of half the tombstone cost, reverse the judgment and remand for a new hearing upon the issue of the character of payments from appellant administrator to respondent Brenda Kay Jones.

We have no verbatim record of the hearing held in the probate division. The record was kept by means of a sound recording, but the tape was lost. The parties have entered into a stipulation as to what the evidence was and that stipulation has been filed here.

Appellant Nolan J. Jones was Administrator WWA of the estate of his deceased wife, Ruby Opal Jones. They were the parents of Kimberly Ann Jones, born July 24, 1958, and of Brenda Kay Jones and Brian Nolan Jones, born October 6, 1960. The husband and the three children were the sole beneficiaries of decedent's will.

At the conclusion of the administration there remained for distribution, according to the decree of distribution appealed from, cash of $20,263.69 and a 160-acre farm. The decree called for distribution of $6,754.56 to Nolan J. Jones and $4,503.04 to each of the three children. The court, upon objections filed by Brenda Kay, disallowed credit for partial distributions claimed by the administrator in his proposed final settlement and order of distribution, of $576.71 to each child, and additional "advancements" of $1,473.56 to Brenda Kay.

Only Brenda Kay objected to the claimed credits. Kimberly Ann did not object, and Brian Nolan had died before the administrator filed his final settlement. Brenda Kay's objections stated that she had never received any partial distribution from the estate, and also that no part of the claimed partial distributions had ever been ordered by the court.

The evidence in the case (according to the stipulation) was that Jones on November 21, 1978, had given to each of the three children two checks, one for $493.64 and the other for $83.07. Written on each check in the lower left-hand corner after the printed word "memo" were the words "Ruby's estate settlement."

In addition to the foregoing there were 20 checks, in varying amounts, totaling $1,473.56, dated over a period from August 23, 1978, to December 14, 1980. They were payable to various payees, most of them to "Brenda Kay Jones" or to "Brenda Kay Wilson." Appellant listed these as advancements "to or on behalf of Brenda Kay Jones." One of said checks, payable to "Brenda Kay Wilson" (the same person as Brenda Kay Jones) in the sum of $100 contained a notation "drew on estate." Many of the memo spaces were left blank. The others contained a variety of notations, such as "college tuition fee," "radiator repair," "groceries," and the like.

We copy from the stipulation the testimony of Brenda Kay Jones:

BRENDA KAY JONES testified that her father had given her the checks introduced in evidence. She testified that the checks were never indicated as being either advancements or partial distributions. She stated the checks were written from her father's personal bank account and there was no court order allowing any such payments from her mother's estate. In examining each check, she indicated it was either a loan which had been repaid, or had been paid

for her support while she was a minor or had been a gift. She stated that she gave her father a pool table as re-payment for some of the amounts loaned. There was testimony that she lived with her father part of the time in question and away part of the time.

Kimberly Ann Jones, according to the stipulation, "testified that the partial distribution and advancements were made by her father."

The probate division, as noted, disallowed credit not only for the supposed partial distributions to Brenda Kay, but also disallowed credit for the partial distributions to Kimberly Ann and to Brian Nolan.

*Payments to Kimberly Ann Jones and Brian Nolan Jones.*

As to the distributions to Kimberly Ann and to Brian Nolan, credit for them should have been allowed and the order disallowing them is reversed.

There was no testimony that those payments were not intended as partial distributions from the estate, and all the testimony, consisting of the testimony only of appellant and of Kimberly Ann, was that they were so intended. The trial court's disallowance of these payments as partial distributions cannot be justified on the ground that they were not actually partial distributions.

The remaining question is whether the absence of an order of partial distribution under § 473.613, RSMo 1978, disqualifies the claimed partial distributions for credit.

We treat the disallowance of the partial distributions to Kimberly Ann and to Brian Nolan as having been made in the court's *sua sponte* powers (see § 473.590, RSMo (Supp.1981); *In re Estate of Schnur,* 485 S.W.2d 682, 686 (Mo.App.1972)), rather than as a decision upon an adversary proceeding initiated by Brenda Kay's objections.[1]

We hold that § 473.613, RSMo 1978, does not set up an absolute requirement that

1. Brenda Kay had no justiciable interest in the allowance or disallowance of Kimberly Ann's and Brian Nolan's partial distributions. She stood to gain or lose nothing, had no standing to object to them and in fact did not do so. *Crigler v. Frame,* 632 S.W.2d 94, 95 (Mo.App. 1982).

partial distributions are to be ordered by the court on pain of disallowance.

The courts have been faced with a somewhat analogous situation where personal representatives have paid unallowed claims against the estate and have claimed credit on their settlements. In *Hoffmeyer v. Mintert*, 93 S.W.2d 894 (Mo.1936), it was claimed by the objectors that the executor could not take credit for amounts paid on such a claim even though the objectors (who were legatees) had consented to their payment. The court found as a fact that the claims had been allowed by the court, but it went ahead to say, 93 S.W.2d at 897–98:

> In this instance the assets of the estate were amply sufficient to pay all demands allowed against the estate, of all classes, in full, or all claims against the estate, with a substantial net amount remaining .... No creditor is complaining in this instance; the exceptions now under consideration ... are leveled, by two of the heirs, against certain credits allowed the administrators in their semiannual settlement. They do not charge that the claims paid, and for which these credits were allowed, were not just and true charges against the estate nor do they question the correctness of the amounts paid. The defendants' evidence is that these claims were submitted to and examined by the exceptors and that they approved the allowance, nor is there any least intimation of fraud or concealment about the matter on the part of either the claimants or the administrators. The element of estoppel might be considered in this connection.

In *In re Helm's Estate*, 136 S.W.2d 421, 426–27 (Mo.App.1940), the court said:

> It further appears from the evidence that some of the checks drawn on the funds in the hands of the administratrix were written by Herby C. Helm and that he participated in the benefits, both directly and indirectly, and advised, counseled and directed the administratrix in carrying out the family agreement. That he had full knowledge of the manner in which the assets in the hands of the administratrix were being handled, consented thereto and acquiesced therein. That such conduct and acquiescence on the part of appellant creates an estoppel in pais and although the administratrix failed to comply with the statutory law in settling up the affairs of the estate, appellant is now estopped to object thereto.

See also to the same effect *In re Purl's Estate*, 147 Mo.App. 105, 125 S.W. 849, 856 (1910), overruled on other grounds, *State ex rel. Barker v. Sage*, 267 Mo. 493, 184 S.W. 984, 991 (1916).[2]

In this case, it is clear that Kimberly Ann and Brian Nolan received the two checks in partial distribution. They do not deny it and do not resist appellants' having credit therefor. As the above cases hold, having received the money, they would be estopped to object to the administrator's receiving credit on his settlement, where no debtor or another distributee was prejudiced by the premature distribution. *A fortiori* the probate division could not *sua sponte* disallow the credits. It was in error in doing so and on that point must be reversed. The trial court is directed to allow the claimed partial distributions.

*Payments to and for Brenda Kay Jones.*

■ As to the payments to Brenda Kay, which were disallowed as partial distributions, the judgment of disallowance is also reversed but the cause is remanded to the trial court for a new trial.

It is true, as respondent Brenda Kay reminds us, that we ordinarily affirm the trial court judgment if there is any ground for doing so, *Oldham's Farm Sausage Co. v. Salco, Inc.*, 633 S.W.2d 177, 180 (Mo.App. 1982); *Puckett v. Puckett*, 632 S.W.2d 83, 84 (Mo.App.1982), and that the judgment as to the payments to Brenda Kay would ordi-

2. The cases cited for the point under discussion were decided under earlier statutes. The present statute specifically allows the personal representative credit for unallowed claims un-

less it should appear upon objection that the estate was not liable therefor. § 473.403, RSMo (Supp.1981).

narily be sustainable on her testimony (which could have been believed by the trial court) that all the payments to her were of some other character than distributions from the estate.

It is evident to us, however, that the court believed that the payments were disallowable as distributions as a matter of law because not ordered by the court under § 473.613, RSMo 1978. There is no other explanation for his disallowance of the payments to Kimberly Ann and to Brian Nolan. That being so, the trial court never reached the factual question of the character of the $2,050.28 payments to Brenda Kay, whether they were distributions as testified by appellant and Kimberly Ann, or other types of payments, as Brenda Kay testified. The case must be remanded for a new hearing limited to the payments to Brenda Kay, to determine that factual question. In view of the loss of the record of the first hearing, it is ordered that the court hear the matter *de novo*.

*Payment for tombstone.*

█ The appellant paid $1,688.96 for a tombstone. This was a "double tombstone," which was to mark decedent's grave and his own. The court allowed one-half of the total cost as credit and disallowed the other half. § 473.397, RSMo (Supp.1981), allows a personal representative to take credit for the "reasonable cost of tombstone." The statute allows the court a reasonable latitude in regulating the amount that can be taken from a decedent's estate for a tombstone, and we believe the court was within his discretion in allowing only half the cost of the double tombstone.

*Conclusion.*

The judgment with respect to the claimed distributions to Kimberly Ann and to Brian Nolan is reversed. The judgment with respect to the claimed distributions to Brenda Kay is reversed and the case is remanded for a hearing upon Brenda Kay's objections, in accordance with the foregoing opinion. The judgment disallowing half the tombstone cost is affirmed.

All concur.